# EXHIBIT - A

FILED: 8/12/2019 4:11 PM
David Trantham
Denton County District Clerk
By: Shelley Mccutcheon, Deputy

CAUSE NO. _19-7298-367_

| | | |
|---|---|---|
| ROBERT OBLON, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ____ JUDICIAL DISTRICT |
| | § | |
| JORDAN BROCK, | § | |
| | § | |
| Defendant. | § | DENTON COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Robert Oblon, Plaintiff in the above styled and numbered cause, and files this, his Original Petition, complaining of Jordan Brock, Defendant, and in support of same would respectfully show this Court the following:

## I.

### DISCOVERY CONTROL PLAN

Discovery is intended to be conducted under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

## II.

### PARTIES AND SERVICE OF PROCESS

1. Plaintiff Robert Oblon is an individual residing in Collin County, Texas. The last three (3) digits of his Social Security Number are 052.

2. Defendant Jordan Brock is an individual residing in Denton County, Texas. This Defendant can be served with process at 908 Sir Constantine Drive, Lewisville, Texas 75056.

Unofficial Copy

## III.

## JURISDICTION AND VENUE

Plaintiff is seeking to recover declaratory relief as well as monetary damages that are within the jurisdictional limits of this Court. Plaintiff is seeking to recover damages in excess of $1,000,000, to which he is entitled to receive as compensation for the injuries described below. Venue is proper in this District Court of Denton, Texas because Defendant Brock resides there and because a substantial part of the events giving rise to the claims at issue occurred in Denton County, Texas.

## IV.

## RELEVANT BACKGROUND FACTS

1. Plaintiff Robert Oblon a respected, recognized figure of the world of direct selling. He became a meta-search pioneer and online travel expert, and has enjoyed a significant amount of success in network marketing.

2. In early 2016 Oblon founded a business named Alchemist Holdings, LLC ("Alchemist"). Alchemist was formally organized under the laws of the State of Delaware at that time. The Operating Agreement that was created and executed for this entity identifies Oblon – and only Oblon – as the (sole) Member of Alchemist.

3. This Operating Agreement – which has never been amended or modified in a signed writing – provides that the business and affairs of Alchemist shall be conducted and managed by the Member and that Oblon, as the sole member, has sole authority and power to act for and on behalf of Alchemist, to do any act that would be binding on Alchemist, and to incur any expenditures on behalf of Alchemist. This Operating Agreement also states that no assignment, transfer, or other disposition of all or any part of the interest of any Member in Alchemist shall be binding upon Alchemist unless and until a duly executed and acknowledged counterpart of such assignment or

Unofficial Copy

instrument of transfer, in form and substance satisfactory to Alchemist, has been delivered to Alchemist. Oblon signed this Operating Agreement both as the Managing Member of Alchemist and as the (sole) Member of/in Alchemist.

4.  On March 15, 2017 Alchemist entered into a written Consultancy and Marketing Agreement with Sharing Services, Inc. ("Sharing Services"). Defendant Brock signed this Agreement for and on behalf of Sharing Services, and Plaintiff Oblon signed this Agreement for and on behalf of Alchemist ("Alchemist Holdings, LLC by Robert Oblon, Title: Owner").

5.  On May 23, 2017 Jordan Brock, acting on behalf of Sharing Services, submitted an "Issuance Instruction Form – New Stock" to VStock Transfer, LLC instructing VStock Transfer to issue shares of stock in Sharing Services to Alchemist Holdings. The email address for Alchemist that Brock included on this Form was the personal email address for Plaintiff Oblon.

6.  On May 30, 2017 Sharing Services filed a Form 8-K with the United States Securities and Exchange Commission ("SEC"). Brock signed this Agreement on behalf of Sharing Services. A Share Exchange Agreement was attached to this filing as Exhibit 2.1. Brock signed this Agreement on behalf of Sharing Services (and on behalf of another entity, Total Travel Media, Inc.), and Oblon signed this Agreement for and on behalf of Alchemist.

7.  In August 2017 two (2) additional documents were filed with the SEC. One was a Form 3, which is signed by Oblon for and on behalf of Alchemist. The second was a Form Schedule 13D, which was signed by Oblon, as "Manager" for Alchemist.

8.  In September 2017 Sharing Services filed a Form 10-K for the fiscal year ended April 30, 2017 with the SEC. This Report specifically references the Consultancy and Marketing Agreement addressed above. This Report identifies Brock as the President, CEO, and Director of Sharing Services. Nothing in this Report states – or suggests – that Brock has any ownership interest in Alchemist or that Brock has any actual or voting control in/over Alchemist.

9. Later that month Sharing Services filed a Form 8-K (Amendment No. 1) with the SEC. Brock signed this Amendment on behalf of Sharing Services. Nothing in this Amendment references any *alleged* ownership interest in Alchemist that Brock (now) claims to have, and nothing in this Amendment states, or suggests, that Brock has any actual or voting control in/over Alchemist.

10. In early October 2017 Sharing Services filed a Form 8-K with the SEC. Brock signed this Agreement on behalf of Sharing Services, and Oblon signed this Agreement on behalf of Alchemist (which is identified by name as an Equity-Holder in Sharing Services).

11. One (1) week later, a Form 4 was filed with the SEC. This form references Alchemist by name, and was signed by Oblon (for and on behalf of Alchemist).

12. On or about that same date, another Schedule 13D (Amendment No. 1) was filed with the SEC. This Schedule 13D specifically states that the "control person of Alchemist Holdings, LLC is Robert Oblon". Oblon signed this Agreement, as Manager of Alchemist.

13. In early December 2017 Sharing Services filed a Form 8-K with the SEC. This Form 8-K includes the following language: "Robert Oblon, age 52, has been the visionary architect and Chief Executive Officer of Alchemist Holdings, LLC and Four Oceans Holdings, Inc., which is now a wholly owned subsidiary of the Company, for the past five (5) years." This Form 8-K also includes the following language: "Prior to his election as a Director of the Company, Mr. Oblon and/or Alchemist Holdings, LLC, an entity controlled by Mr. Oblon, has been involved in certain transactions with the Company during its preceding and current fiscal years...". Oblon signed this Form 8-K on behalf of Sharing Services (as the Chairman of the Board).

14. In February 2018 Sharing Services filed a Schedule 14A (Proxy Statement) with the SEC. This document identifies Oblon as the "visionary architect and Chief Executive Officer of Alchemist". This Schedule also references Brock, but does not say anything about his *alleged* connection with Alchemist at all. This Schedule goes on to recognize that Alchemist "is controlled

Unofficial Copy

by our Chairman, Robert Oblon", and does not reference any ownership interest in Alchemist that Brock may claim to have. This Schedule goes on to state that Oblon "controls Alchemist" and, further, that Oblon "is deemed to be the beneficial owner" of the shares of stock that Alchemist owns in Sharing Services. This Schedule was signed by Frank Walters, Secretary of Sharing Services.

15. Later that year, in September 2018, another Schedule 14A (Proxy Statement) was filed by Sharing Services with the SEC. This Schedule references Oblon as the "visionary architect and Chief Executive Officer of Alchemist". This Schedule also references Brock, but does not say anything about Brock's *alleged* connection to Alchemist. This statement also references the Consultancy and Marketing Agreement discussed above, and (again) notes that Oblon "controls Alchemist" and is "deemed to be the beneficial owner" of stock owned by Alchemist in Sharing Services. Walters also signed this document, as Secretary for Sharing Services.

16. On January 15, 2019 Sharing Services filed a new Form 8-K with the SEC. This Form references Alchemist as being the "largest stockholder" of Sharing Services. This Form also states that Alchemist is "controlled by Mr. Robert Oblon". This Form was signed by John Thatch, President, CEO, and Director of Sharing Services.

17. On May 16, 2019 Sharing Services filed a Form 10 (Amendment No. 4) with the SEC. This Form also recognizes that Oblon "controls Alchemist…and is deemed to be the beneficial owner" of certain stock owned by Alchemist in Sharing Services.

18. Defendant Brock has (in the past) done some work with – and for – Alchemist. However, Brock was **never** formally issued any ownership (a/k/a member) units in Alchemist, and has **never** been recognized as a member of/in Alchemist. Moreover, the sole member of Alchemist – Plaintiff Oblon – has never agreed to give Defendant Brock any acting or voting "control" over the business and operations of Alchemist.

Unofficial Copy

19. While Defendant Brock was doing some work with and for Alchemist – at the request of Oblon – Brock engaged in certain wrongful actions and conduct that he has admitted to, in writing. In fact, Brock has admitted, in writing, that he and his affiliates (that were identified by name and did not include Alchemist) "fraudulently" executed certain funding agreements to the detriment of Sharing Services, and that he (Brock) and his affiliates (that, again, were identified by name and did not include Alchemist) benefited to a "material financial degree" from such wrongful conduct.

20. When making these damaging admissions Brock also falsely and wrongfully held himself out to others as being an owner of/in Alchemist and of having actual and voting control over the business and operations of Alchemist (when he did not have such ownership interest/control).

21. Oblon is also the founder of a limited liability company named Elepreneurs, LLC and of a limited liability company named Elevacity, LLC. Oblon has recently learned that Defendant Brock has provided false information to him and to others relating to monies that he (Defendant Brock) was involved in raising for Elevacity and, further, that Brock has been and is falsely claiming that he was and is the founder of Elevacity and has and is wrongfully encouraging others to recognize him – as opposed to Oblon – as the founder of Elevacity, with the goal of taking over ownership and operational control of Elevacity. Defendant Brock has no lawful right to do so. Information that Oblon has recently obtained actually demonstrates that Defendant Brock was and is encouraging others to withhold information about these matters from Oblon.

22. On March 28, 2019 a Founder Consulting Agreement was entered into between Elepreneurs, LLC and Robert Oblon that expressly identifies Oblon as the "founder" of that entity.

23. The wrongful actions and conduct of Brock described above have proximately caused damages to Oblon, for which he now sues, to the fullest extent of the law.

## V.

### CAUSE OF ACTION COUNT I: DECLARATORY JUDGMENT

24. Plaintiff Oblon realleges and incorporates the facts and allegations set forth above as if they were fully set forth at length herein.

25. This cause of action is being asserted pursuant to the Uniform Declaratory Judgments Act.

26. As discussed above, Defendant Brock has wrongfully claimed – and continues to wrongfully claim – an ownership interest in, and alleged actual and voting control over, the business and operations of Alchemist. Defendant Brock is not a founder of Alchemist. Defendant Brock has never been issued any membership interest in Alchemist. Defendant Brock has no lawful actual or voting control over the business and operations of Alchemist. Instead, Oblon does.

27. The Operating Agreement for Alchemist and the other documents identified above – including multiple publicly-available filings made with the SEC, including some signed by Defendant Brock, are being (wrongfully) affected by Brock's false claims and representations.

28. Accordingly, Plaintiff Oblon asks that this Court enter an Order declaring, as a matter of law, that:

   a. Jordan Brock was not a founder of, and is not a founder of, Alchemist;

   b. Jordan Brock has never been issued any units of membership in Alchemist;

   c. Jordan Brock has no lawful ownership interest in and no voting "control" over the business and operations of Alchemist;

   d. Plaintiff Oblon is the sole founder of Alchemist, , Elepreneurs, LLC and Elevacity, LLC;

   e. Plaintiff Oblon is the sole member of/in Alchemist; and

f. Plaintiff Oblon has sole lawful voting rights/control in and over the business and operations of Alchemist.

29. Additionally, Plaintiff Oblon seeks an award of costs and all reasonable and necessary attorney's fees that he is forced to incur in prosecution of this claim, as such an award would be both equitable and just.

## VI.

## CAUSE OF ACTION COUNT II: TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

30. Plaintiff Oblon realleges and incorporates the facts and allegations set forth above as if they were fully set forth at length herein.

31. As discussed above, Plaintiff Oblon entered into a valid Operating Agreement with and for Alchemist, and Alchemist entered into a valid Consultancy and Marketing Agreement with Sharing Services.

32. Defendant Brock has, through his wrongful actions and conduct, willfully and intentionally interfered with these contracts.

33. This interference has proximately caused Plaintiff Oblon injury, for which he now sues, to the fullest extent of the law. This includes an award of all actual damages, exemplary damages in an amount deemed just and appropriate by the trier of fact, pre-judgment and post judgment interest at the highest rates permitted by law, and all taxable costs of court.

## VII.

## CAUSE OF ACTION COUNT III: COMMON LAW FRAUD AND STATURORY FRAUD

34. Plaintiff Oblon realleges and incorporates the facts and allegations set forth above as if they were fully set forth at length herein.

Unofficial Copy

35. The business of Alchemist involved stock (both shares in Alchemist and shares owned by Alchemist in Sharing Services).

36. Defendant Brock has, through his wrongful actions and conduct, made certain false representations of fact, false promises, and/or benefited by not disclosing that his representations and promises were false.

37. Defendant Brock's false representations and promises were made to Plaintiff Oblon (and others) for the purpose of inducing the Plaintiff to enter into certain contracts and other transactions.

38. Plaintiff Oblon actually and justifiably relied on Defendant Brock's false representations and promises by entering into the contracts and other transactions.

39. Plaintiff Oblon's (actual and justifiable) reliance has proximately caused Plaintiff Oblon injury, for which he now sues, to the fullest extent of the law. This includes an award of all actual damages sustained, exemplary damages in an amount deemed just and appropriate by the trier of fact, pre-judgment and post judgment interest at the highest rates permitted by law, court costs, reasonable and necessary attorney's fees, expert witness fees, and deposition copy costs.

## VIII.

### CAUSE OF ACTION COUNT IV: BUSINESS DISPARAGEMENT

40. Plaintiff Oblon realleges and incorporates the facts and allegations set forth above as if they were fully set forth at length herein.

41. Defendant Brock has published disparaging words (both verbally and in writing) about the Plaintiff's economic interests.

42. The published words were false.

43. Defendant Brock published these words with malice as defined by applicable Texas law.

44. Defendant Brock published these words without privilege.

45. These publications have caused Plaintiff special damages, for which he now sues, to the fullest extent of the law. This includes recovery of all direct pecuniary losses attributable to the false communications, reimbursement of all expenses incurred for necessary measures taken by Plaintiff Oblon to counteract these false publications, exemplary damages in an amount deemed just and appropriate by the trier of fact, pre-judgment and post judgment interest at the highest rates permitted by law, and all taxable costs of court.

### IX.

### CAUSE OF ACTION COUNT V: UNLAWFULL APPROPRIATION OF NAME OR LIKENESS

46. Plaintiff Oblon realleges and incorporates the facts and allegations set forth above as if they were fully set forth at length herein.

47. By engaging in certain wrongful actions and conduct, including those described in paragraph nos. 20 and 21 above, Defendant Brock has unlawfully appropriated the Plaintiff's name (reputation, prestige, commercial standing, and public interest) and/or likeness for the value associated with it.

48. Plaintiff Oblon can be identified from the publications in which his name and/or likeness was wrongfully appropriated.

49. Defendant Brock has received certain economic advantages/benefits from his wrongful appropriation.

50. Plaintiff Oblon has suffered injury as a result of Defendant Brock's wrongful appropriation, for which he now sues, to the fullest extent of the law. This includes recovery for all actual damages sustained, exemplary damages in an amount deemed just and appropriate by the trier of fact, pre-judgment and post judgment interest at the highest rates permitted by law, and all taxable

costs of court.

## X.

## REQUESTS FOR DISCLOSURES

51. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiff Oblon requests that Defendant Brock disclose, within the time required by the applicable Texas Rules of Civil Procedure, the information and material described in Rule 194.2(a)-(l). This Request for Disclosure is continuing in nature, regardless of whether or not this request is restated subsequently in any amended pleadings. Defendant Brock is under an ongoing duty to amend and/or supplement his disclosure responses as required by Rule 193.5 of the Texas Rules of Civil Procedure.

## XI.

## RULE 193.7 NOTICE

52. Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiff Oblon intends to rely upon the authenticity of any document Defendant Brock produces in discovery.

## XII.

## JURY DEMAND

In accordance with Rule 216 of the Texas Rules of Civil Procedure, Plaintiff Oblon requests a trial by jury. Simultaneously with the filing of this Original Petition a jury fee is being paid on behalf of Plaintiff Oblon.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Robert Oblon respectfully prays that this Original Petition be received and filed and, upon final trial of this cause, that he have and recover from and against Defendant Brock all of the relief prayed for herein and for such further relief, both at law and in equity, to which he may show himself justly entitled.

Unofficial Copy

Respectfully submitted,

**FEE, SMITH, SHARP & VITULLO, L.L.P**

**HOWARD J. KLATSKY**
State Bar No. 00786024
hklatsky@feesmith.com
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240

972-980-3494
972-934-9200 [Fax]

**ATTORNEY FOR PLAINTIFF
ROBERT OBLON**