**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| DENNIS BURBACK, KEN EDDY and MARK ANDERSEN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:20-CV-946-SDJ |
| ROBERT OBLON, JORDAN BROCK, JEFF BOLLINGER, JOHN THATCH, FOUROCEANS GLOBAL, LLC, FOUR OCEANS HOLDING, INC., ALCHEMIST HOLDINGS, LLC, ELEPRENEURS U.S., LLC, ELEVACITY U.S., LLC, SHARING SERVICES GLOBAL CORPORATION, CUSTOM TRAVEL HOLDINGS, INC., and DOES 1-5, | § § § § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT THATCH'S MOTION TO DISMISS

Plaintiffs Dennis Burback, Ken Eddy, and Mark Andersen (collectively, "Plaintiffs") file this Response in Opposition to Defendant Thatch's Motion to Dismiss [Dkt. 19] ("Motion") and respectfully request the Court to deny the Motion in its entirety.

## INTRODUCTION

The issue presented in the motion presented is whether Plaintiffs' detailed allegations sufficiently apprise Defendant John Thatch ("Thatch") of the allegations against him and put him on notice of the basis for the claims asserted such that he is able to marshal an appropriate defense.

In deciding the Motion, the question is not whether Plaintiffs will ultimately prevail at trial, but *whether, assuming all the allegations – and all inferences that properly may be drawn the allegations – are true*, those allegations and inferences sufficiently apprise Thatch of the nature of Plaintiffs' claims against him and support a right to relief that is more than purely speculative.

Thatch conflates Plaintiffs' allegations, cherry-picks and reads them out of context, or flatly ignores them in order to force his arguments within the confines of what he contends are relevant authorities.  A plain reading of the Complaint in light of applicable law makes clear that Thatch fails to meet his burden and the Motion should be denied.

The Complaint's fraud and fraud-based allegations are neither speculative, conclusory, nor a formulaic recitation of the elements of their causes of action.  Instead, they are well-pleaded claims for relief that not only are plausible on their face but further satisfy the heightened pleading requirements for fraud claims, which are largely directed to Thatch's actionable silence, omissions, and non-disclosures.  Denial of the Motion is particularly warranted when the well-pleaded facts – and all inferences drawn from those facts – are viewed in a light most favorable to Plaintiffs.  Taking the well-pleaded facts alleged in the Complaint as admitted, Plaintiffs have sufficiently pled their claims against Thatch in accordance with both Rules 9(b) and 12(b)(6), and the Motion should be denied.

## RESPONSE TO STATEMENT OF ISSUES[1]

- The Complaint sufficiently alleges facts—which must be accepted as true and all inferences drawn from those facts viewed in a light most favorable to Plaintiffs—to state fraud and fraud-based claims against Thatch in accordance with Rule 9 and Rule 12(b)(6) standards, and decisional authorities.

## FACTUAL BACKGROUND

While the core of this case is relatively straightforward, its explanation requires description of the actions of multiple players – both individuals and corporate entities – whose fraudulent actions and conduct, including their actionable silence, omissions and non-disclosures, and their efforts to fraudulently conceal their conduct, have stretched over several years, making the unwinding of these alleged transactions and the relationships among the individual and corporate defendants challenging for pleading purposes.  Nevertheless, the case is one primarily sounding in fraud involving certain securities-related transactions.

Plaintiffs, who were unsophisticated investors[2], have alleged factual matters and causes of action in great detail for several species of fraud, including federal causes of action for securities fraud, as well as Texas-based causes of action for statutory fraud, common law fraud, fraud by non-disclosure, breach of fiduciary duty, unjust enrichment, fraud-related claims of civil conspiracy, aiding and abetting, and unjust enrichment, among others.[3]

---

[1] Thatch's Motion fails to provide a separate statement of the issues to be decided by the Court. *See* L.R. CV-7(a)(1) ("Case dispositive motions shall contain a statement of the issues to be decided by the court.").  Despite this, and in an effort to comply with L.R. CV-7, Plaintiffs set forth their response to what they believe to be the issue presented.  Additionally, because motions to dismiss for failure to plead with particularity under Rule 9(b) are treated identically with Rule 12(b)(6) motions to dismiss for failure to state a claim (*See, e.g.*, *In re Key Energy Services, Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 830 (S.D. Tex. 2016)) the Rule 9(b) and 12(b)(6) standards are discussed together here.

[2] *See* Complaint [Dkt 1] ("Compl.") at ¶¶ 80, 121(a), 137(a), 139(h).

[3] *See* Compl. at ¶¶ 41-57 (Count 1: ¶¶ 117-132 [10b-5 re PNFS, *not including Defendant Thatch*]); 57-79 (Count 2 [10b-5, including Thatch re: CSFS]: ¶¶ 133-148); 80-83 (Count 3 [statutory fraud including Thatch re: CSFS]: ¶¶ 149-162), 83-86 (Count 4 [Common Law fraud including Thatch re CSFS]: ¶¶163-176); 86-89 (Count 5 [fraud by nondisclosure including Thatch re CSFS]: ¶¶ 177-

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                        **3**

The Plaintiffs' fraud claims stem from two separate, but ultimately interrelated, investment schemes that Plaintiffs' have described in detail in their Complaint. These are referred to in the Complaint as: (1) the Promissory Note-Fraud Scheme ("PNFS"), and (2) the CTH Stock-Fraud Scheme ("CSFS").[4] A brief summary of the PNFS and CSFS is necessary to demonstrate the sufficiency of Plaintiffs' allegations against Thatch and how they are related.

The PNFS stems from capital certain defendants raised from Plaintiffs in connection with unregistered transactions for the purchase of promissory-note securities.[5]  As discussed throughout the Complaint, at least Defendants Oblon and Brock (individually and in their representative and fiduciary capacities), made false, material, misrepresentations and omissions to solicit the Plaintiffs' investments in the multilevel marketing company, defendant FourOceans Global LLC ("FOG"), promising the return of Plaintiffs' investment, plus revenue shares and equity ownership in FOG, among other things.[6]

Plaintiffs' investments were not used for their stated purposes, however, and instead were fraudulently obtained as part of the PNFS in order for at least Defendants Oblon and Brock to "cover personal expenses and/or for personal gains, among other things, as well as [to make] Ponzi payments to other similarly situated investors in FOG (or other failed Oblon ventures) to keep the PNFS (and other Oblon schemes) afloat."[7]

---

190); 89-92 (Count 6 [unjust enrichment including Thatch]: ¶¶ 191-197); 92-93 (Count 7 [civil conspiracy to committee fraud including Thatch]: ¶¶198-204), 93 (Count 8 [Aiding and Abetting including Thatch]: ¶¶ 205-210); 95-96 (Count 9 [Accounting including Thatch]: ¶¶ 211-13); 96-97 (Count 10 [Constructive trust including Thatch]: ¶¶214-218); and 97-100 (Count 11 [Breach of Fiduciary Duty, *not including Thatch*]:¶¶ 219-225).

[4] *See* Compl. at ¶¶ 41-71 (describing the PNFS), 72-92 (describing the CSFS); 93-100 (describing the efforts to cover-up the PNFS).

[5] *See* Compl. at ¶¶ 41-71.

[6] *See* Compl. at ¶¶ 45.

[7] *See, e.g.,* Compl. at ¶¶ 59, 63, 121(a, b), 124(a), 127-128, 130(a).

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                                    **4**

Immediately before filing suit, Plaintiffs' allegations in this regard were independently confirmed when they received a copy of a demand letter to Defendant Brock confirming that that others are also claiming to be victims of some or all of these defendants' similar (if not the same) investment scams, including multiple, alleged violations of the Securities Exchange Act, as well as mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act.[8]

After the PNFS, and unbeknownst to Plaintiffs, FOG and its affiliate or successor in interest, or at a minimum, the holder of its assets, Four Oceans Holdings, Inc. ("FOHI"), were acquired by Sharing Services, Inc. ("SSI"). SSI was the predecessor in interest to defendant Sharing Services Global Corporation ("SHRG"), which is now a publicly traded company.[9]

Following SHRG's acquisition of FOG, Defendants Oblon, Brock, Thatch, and Bollinger (in their individual and representative capacities) all engaged in additional acts of fraud by engaging in (what was described to Plaintiffs as) an insider-trading scheme in order to cover-up the PNFS and to induce additional investments from Plaintiffs for the purchase of shares in defendant Custom Travel Holdings, Inc. ("CTH").[10]  Plaintiffs refer to this later series of events in the Complaint as the CTH Stock Fraud Scheme ("CSFS"), and also as the "plan," which it was falsely represented to Plaintiffs as the vehicle to repay Plaintiffs for their initial investments and to secure their equity ownership interest in what is now the publicly traded defendant SHRG.[11]

Thatch is correct that Plaintiffs do not allege that he was an active participant in the PNFS, but that does not help his motion.  The PNFS began in the spring of 2015 at the direction of at least Defendants Oblon and Brock, which was well before SHRG acquired FOG (and/or its assets) in

---

[8] Compl. at ¶¶ 105-106, Ex. N.
[9] *See, e.g.,* Compl. at ¶¶ 31-32, 35-36.  For convenience, SSI and SHRG are collectively referred to as SHRG.
[10] Compl. at ¶¶ 78, 80-82.
[11] *See, e.g.,* Compl. at ¶¶ 13, 72-92.

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                                 **5**

October 2017.[12]  Plaintiffs went to great lengths to make clear that the Complaint allegations relating to Thatch were predicated upon his subsequent knowledge of the PNFS while acting in his individual capacity, as well as an officer, director, and shareholder of SHRG, and that he participated in efforts to cover up the PNFS (along with his co-conspirators and co-defendants) with additional, actionable conduct in connection with the CSFS.  The Complaint clearly alleges Thatch learned of and had actual (or at least constructive) knowledge of the PNFS at some time after SHRG acquired FOG,[13] failed to disclose the fraudulent acts of at least Defendants Oblon and Brock in connection with the PNFS,[14] and also became an active participant in (and one of the architects of) the insider-CSFS in an effort to conceal the earlier PNFS and thereby and otherwise secure additional investments from Plaintiffs' beginning at least as early as February 2018, if not sooner.[15]

Thatch is also correct that, unlike the allegations directed to individual Defendants Oblon, Brock, and Bollinger, Plaintiffs only attribute a handful of overt statements to Thatch.[16]  This fact, too, however, fails to support the Motion.

Contrary to Thatch's Motion, the statements attributed to him in the Complaint, while they were false, material, and actionable in and of themselves, do not form the crux of Plaintiffs' claims against him.  Thatch's Motion misses the mark by focusing almost solely on whether the statements attributed to him are tantamount to actionable misrepresentations, while ignoring what is at the

---

[12] *See* Compl. at ¶¶ 19, n.2.

[13] *See, e.g.*, Compl. at ¶¶ 68, 70, 72, 109 (generally), and 146(c)(x).

[14] *See* n. 12; *see also, e.g.*, Compl. at ¶¶ 92, 110, 137(a), 138, 140(a-c), 141.

[15] Compl. at ¶¶ 30, 72-92.  Despite alleging that Thatch had full knowledge of PNFS, and that he had full knowledge of and was an architect of the "plan" comprising the insider-CNFS, and that he had a duty to disclose the true facts, Thatch's Motion fails to address these allegations, which are presumed as true.

[16] *See* Compl. at ¶¶ 72-73, 76.

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                                          **6**

heart of the case against him: that the statements independently confirm, especially in conjunction with other facts and inferences therefrom, including statements by his co-conspirators, when considered as a whole and taken as true, his actual knowledge (or at a minimum, constructive knowledge) – in his individual capacity and as an officer, director and shareholder of SHRG – of both the PNFS and the CSFS, and his actionable conduct arising from his silence, omissions, and nondisclosures in the face of a duty to disclose the true facts to Plaintiffs.[17]

As explained herein, Plaintiffs' claims against Thatch are more than sufficiently supported by well-pleaded, specific facts, and are not mere speculation.  Thatch's Motion should be denied.

## ARGUMENTS AND AUTHORITIES

I.      **Legal Standards.**

A.      **The Rule 12(b)(6) standard.**

Rule 12(b)(6) motions are "disfavored and rarely granted."[18]  To survive a 12(b)(6) motion, a complaint need only allege sufficient factual matter, accepted as true, to state a claim that is plausible on its face.[19]  A claim is facially plausible if the complaint pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct.[20]  This standard asks only that there is more than a sheer possibility the defendant acted unlawfully, with all inferences drawn in a light most favorable to the plaintiff.[21]  The Rule 12(b)(6) standard "simply calls for enough fact to raise a reasonable expectation that discovery

---

[17] *See, e.g.,* Compl. at ¶¶ 70, 92, 99, 100, 140(a-c), 169, 182.

[18] *King v. Life School*, 809 F. Supp. 2d 572, 578 (N.D. Tex. 2011) (citing *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981)); *see, e.g., Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 686 (E.D. Tex. 2009) (quoting *Gregson v. Zurich Am. Ins. Co.*, 322 F. 3d 883, 885 (5th Cir. 2003)) ("A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and rarely granted.").

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[20] *Id.*

[21] *Id.*

will reveal evidence of the necessary claims or elements."[22]  Even if proof of the alleged facts is improbable and recovery on the claims is very remote and unlikely, the complaint may proceed.[23]  Plaintiffs' Complaint clears the low bar set by Rule 12(b)(6).[24]

**B.     Pleading Requirements for Fraud-Based Claims – The Rule 9(b) Standard.**

Plaintiffs' fraud claims are subject to the heightened pleading standard imposed by Rule 9(b).[25]  Rule 9(b) requires pleadings to "state with particularity the circumstances constituting fraud."[26] The general rule is that "Rule 9(b) requires the 'who, what, when, where, and how' to be laid out."[27]  However, "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."[28]

Texas law provides that where a plaintiff alleges fraud by omission—and even though no affirmative statements were made or alleged—the failure to disclose a material fact which induced the plaintiffs to continue in a course of conduct may be actionable.[29]  Moreover, a party may be held liable "for the fraudulent misrepresentations of a third party by mere silent acquiescence when

---

[22] *In re S. Scrap Mat. Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[23] *King*, 809 F. Supp. 2d at 578 (quoting *Twombly*, 550 U.S. at 556).

[24] *Meza v. Collier*, No. A-05-CA-1008-LY, 2007 WL 1655898, at *5 (W.D. Tex. June 5, 2007).

[25] FED. R. CIV. P. 9(b); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 954 (E.D. Tex. 2011).

[26] FED. R. CIV. P. 9(b).

[27] *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Elecs., Inc. v. JM Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

[28] *In re Enron Corp. Sec., Derivative & ""ERISA" Litig.*, 490 F. Supp. 2d 784, 789 (S.D. Tex. 2007) (internal citations and quotations omitted); *see also Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 7:20-CV-00211, 2020 WL 5806436, at *13 (S.D. Tex. Sept. 29, 2020); *In re Key Energy Services, Inc. Sec. Litig.*, 166 F. Supp. at 831.

[29] *Mora v. Koy*, CIVA. H-12-3211, 2013 WL 2289887, at *3-*4 (S.D. Tex. May 23, 2013).

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                                    **8**

he benefitted from the fraud," and even though he "may not have misrepresented anything to the Plaintiffs, [he] may be liable for fraud because [he] allegedly participated in the fraudulent transactions and reaped the benefits.[30]

The particularity required "necessarily differs with the facts of each case,"[31] and is relaxed in cases like this one "where the alleged fraud occurred over an extended period of time and consists of numerous acts."[32]  This is also true "where facts relating to the fraud are 'peculiarly within the perpetrator's knowledge,'"[33] which provides that the "alleged fraud 'may be pled on information and belief, provided the plaintiff sets forth the factual basis for his belief.'"[34]  While the exact pleading requirements of Rule 9(b) are case-specific, there are some essential core requirements that can be distilled from Fifth Circuit precedent:

> In every case based on fraud, Rule 9(b) requires the plaintiff to allege as to each individual defendant the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants. The plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud. The plaintiff must also explain why the statements or omissions of the defendant were fraudulent.[35]

And "[j]ust as the particularity requirements of Rule 9(b) are dependent on the facts of the case, they are also dependent on Rule 8."[36]  As stated by the Fifth Circuit: "Rule 9 must be read in light of the basic pleading philosophy set forth in Rule 8 . . . Thus, although Rule 9(b) calls for fraud to be pleaded with particularity, the allegations still must be as short, plain, simple, direct

---

[30] *In re Arthur Andersen LLP*, 121 S.W.3d 471, 481–82 (Tex. App.—Houston [14th Dist.] 2003, no pet.)(internal citations omitted).
[31] *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994).
[32] *Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 821 (E.D. Tex. 2008).
[33] *In re Key Energy Services*, 166 F. Supp. 3d at 830.
[34] *Id.*
[35] *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001) (internal citations and quotations omitted).
[36] *Id.* at 819-20.

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                            **9**

and concise as is reasonable under the circumstances."[37] Plaintiffs' fraud-based allegations directed to Thatch meet the burden imposed by Rules 8 and 9(b).

### 1.    Liability for A Party's Silence or Omission of Material Facts.

Cases concerning the fraudulent omission or nondisclosure of facts are actionable in a variety of fraud-related cases, including both federal securities fraud claims brought under Rule 10b-5(b) (according to the language of the statute itself),[38] Texas common law fraud and fraud by non-disclosure claims,[39] and (3) claims for Texas statutory fraud brought pursuant to Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 27.01(a).[40]  Liability for these fraud-based claims may arise from the omission of a material fact because "the nondisclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose."[41]

Whether a duty to disclose exists is a question of law, and the duty is not limited to a traditional fiduciary relationship as Thatch's Motion suggests.[42]  Texas law makes clear that a duty to disclose arises under several contexts, several of which are applicable (and have been pled) here:

> A duty to speak arises by operation of law when (1) a confidential or fiduciary relationship exists between the parties; or (2) *one party learns later that his previous affirmative statement was false or misleading*; or (3) *one party knows that the other party is relying on a concealed fact*, provided that the concealing party also knows that the relying party is ignorant of the concealed fact and does not have an equal opportunity to discover the truth; or (4) *one party voluntarily discloses some but less than all material facts*, so that he must disclose the whole

---

[37] *Corwin v. Marney*, 788 F.2d 1063, 1068 n.4 (5th Cir. 1986).

[38] Securities and Exchange Commission Rule 10b-5(b) codified at 17 C.F.R. § 240.10b-5(b); *see also McNamara v. Bre-X Minerals Ltd.*, 57 F. Supp. 2d 396, 403 (E.D. Tex. 1999).

[39] *In re Enron Corp. Sec., Derivative & ""ERISA" Litig.*, 490 F. Supp. 2d 784, 792 (S.D. Tex. 2007).

[40] *In re Enron Corp*, 490 F. Supp. 2d at 822.

[41] *Mora v. Koy*, CIV.A. H-12-3211, 2013 WL 2289887, at *3 (S.D. Tex. May 23, 2013) (internal Texas citations omitted); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 820 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Services, Inc.*, 925 F.3d 727 (5th Cir. 2019) ("A duty to disclose arises only from 'a fiduciary *or other similar relation of trust and confidence* between [parties]. . .'" (internal citations omitted and emphasis added).

[42] *Id*. at 4.

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                    **10**

truth, *i.e.*, all material facts, lest his partial disclosure convey a false impression.[43]

As indicated, pleading in these types of cases "typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."[44]

### C. Plaintiffs' Fraud-Based Claims Against Defendant Thatch are Adequately Pled and Satisfy the Standards Set by Rule 12(b)(6) and Rule 9(b).

#### 1. Plaintiffs' allegations of federal securities fraud (Count 2).

Thatch appears to argue that Count 2 of the Complaint (fraud violation of Section 10(b) of the Securities Exchange Act relating to the CSFS) should be dismissed because, he claims, Plaintiffs: (1) failed to allege a misstatement or omission of a material fact, (2) inadequately pled scienter; and (3) inadequately pled reliance and proximate cause (though reliance and proximate cause are just given passing glance with no argument or authorities).[45]

##### a. Plaintiffs' Complaint is replete with allegations of Thatch's actionable silence, omissions and nondisclosures.

Keeping in mind that in omission cases the plaintiff is typically required to only "plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading,"[46] Plaintiffs' allegations against Thatch here undeniably meet this threshold.  In summary, the Complaint extensively alleges the type of

---

[43] *Union Pac. Res. Group, Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001)(emphasis added); s*ee also Keathley v. Baker*, 12-11-00151-CV, 2013 WL 1342524, at *7 (Tex. App.—Tyler Apr. 3, 2013, no pet.); *Lesikar v. Rappeport,* 33 S.W.3d 282, 299 (Tex. App.—Texarkana 2000, pet. denied); *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App.—Fort Worth 1998, pet. denied)(internal citations omitted).

[44] *In re Enron Corp.*, 490 F. Supp. 2d at 789.

[45] Motion at 14-15.  Thatch's Motion fails to address the fact that Plaintiffs have alleged, in non-speculative, non-conclusory recitations of fact, that Thatch has violated the federal securities laws for scheme liability under Rule 10b-5 (a) and (c), as well as misstatement and omission liability under Rule 10b-5 (b).  *See* Compl. at ¶¶ 118, 137, 138-140.

[46] *In re Enron Corp.*, 490 F. Supp. 2d at 789.

**PLAINTIFFS' RESPONSE TO DEFENDANT THATCH'S MOTION TO DISMISS**                                   **11**

facts Thatch omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations to Plaintiffs by Thatch's co-conspirators and co-defendants misleading, as well as establish that: (1) Thatch had actual knowledge of the PNSF,[47] (2) Thatch had actual knowledge of the CSFS,[48] (3) that the CSFS was held out to Plaintiffs' as an insider-trading scheme,[49] (4) that the PNSF and the CSFS were unlawful and fraudulent,[50] (5) that Thatch was one of the architects of the CSFS "plan,"[51] (5) that Thatch owed Plaintiffs duties to disclose true facts,[52] (6) the reasons why Thatch owed Plaintiffs such a duty,[53] and (7) that Thatch breached those duties by his silence, omission, and nondisclosures for failing to disclose the true facts to Plaintiffs knowing they were not aware of them and did not have an equal opportunity to discover the truth due to his and other Defendants' actions.[54]

Plaintiffs' allegations go far beyond what is required by Rule 9(b) and conform with Fifth Circuit precedent setting forth the general guidance for fraud-based pleadings.  In other words, with respect to Thatch, Plaintiffs have alleged, in non-speculative, non-conclusory recitations, "the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants," have "distinguish[ed] among those they sue and enlighten each defendant as to his or her part in the alleged fraud," and "explain[ed] why the statements or omissions of the defendant were fraudulent."[55]

---

[47] *See, e.g.*, Compl. at ¶¶ 68-70, 107, 109, 112, 116, 130(a, c), n. 19, 137(b), 139(a), 146(a), 146 (c)(x)-(xi) and n.20, 146(d).

[48] *See, e.g.*, Compl. at ¶¶ 68-70, 76, 99, 107, 109, 112, 116, 130(a, c), n. 19, 137(b), 139(a), 146(c) n.20, 146(c)(x)-(xi), 146(d), 184.

[49] *See, e.g.*, Compl. at ¶¶ 73, 82, 137(a).

[50] *See, e.g.*, Compl. at ¶¶ 68, 76, 92, 99, 107, 109, 130(a), 137(b), 139(a), n.20, 146(c)(x).

[51] *See, e.g.*, Compl. at ¶¶ 73, 75, 140(a-c).

[52] *See, e.g.*, Compl. at ¶¶ 70, 92, 99, 100, 109, 140(a-c), 181-183.

[53] *See, e.g.*, Compl. at ¶¶ 70, 92, 99, 100, 109, 140(a-c), 181-183.

[54] *See, e.g.*, Compl. at ¶¶ 92, 110, 137(a), 138, 140(a-c), 141.

[55] *Hernandez*, 200 F.R.D. at 291 (internal citations and quotations omitted).

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                              **12**

Further, Thatch's arguments that Plaintiffs' allegations relating to Thatch's knowledge of the frauds that are predicated upon "information and belief" fall flat.[56] This is because the pleading standards in this respect are "relaxed" and allow for pleading upon "information in belief" in view of the fact that fraud alleged by Plaintiffs occurred over an extended period of time consisting of numerous acts,[57] and because the facts relating to the alleged fraud are "peculiarly within the perpetrator's knowledge."[58]   Plaintiffs' allegations more than satisfy the requisite pleading standards, especially at this pre-discovery stage of the proceedings.

### b.  Plaintiffs have adequately pled scienter.

"To satisfy the scienter requirement for securities fraud under Rule 10b–5, the plaintiffs must set forth facts to support an inference that the defendants acted with intent or were severely reckless."[59] "A defendant's omissions or misrepresentations are severely reckless, "if they involve an extreme departure from the standards of ordinary care, and present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."[60]

Sufficiently pleading scienter may be done in one of three ways: "(1) showing the defendant's motive and opportunity for perpetrating the fraud ('motive test'); (2) alleging facts that constitute strong circumstantial evidence of severe recklessness ('recklessness test'); or (3) identifying circumstances that strongly indicate conscious behavior on the part of the defendant ('conscious behavior test')."[61]   Moreover,"[a]n inference of fraudulent intent is supported if the

---

[56] Motion at 12, 15.
[57] *See Foster*, 587 F. Supp. 2d at 821.
[58] *In re Key Energy Services*, 166 F. Supp. 3d at 830.
[59] *McNamara v. Bre-X Minerals Ltd.*, 57 F. Supp. 2d 396, 404 (E.D. Tex. 1999).
[60] *Id.*; *see also In re Key Energy Services*, 166 F. Supp. 3d at 833.
[61] *McNamara*, 57 F. Supp. 2d at 405.

**PLAINTIFFS' RESPONSE TO DEFENDANT
THATCH'S MOTION TO DISMISS**                                                                                   **13**

Plaintiffs either '(1) show a defendant's motive [and opportunity] to commit securities fraud, or (2) identify circumstances that indicate conscious behavior on the part of the defendant.'"[62] And "Circumstantial evidence of such conscious behavior or severe recklessness is sufficient to support a strong inference of scienter."[63]

Plaintiffs' Complaint sets forth specific allegations of scienter generally (for facts common to each defendant) and specifically for each defendant, including Thatch.[64]  Plaintiffs have alleged that defendants "had a motive to operate and benefit from the operation of the CTH Stock-fraud scheme, and opportunity to conceal the fact that they were operating such a scheme [*i.e.*, the CSFS]"[65] and note that also "*scienter* can be inferred" [66] from a litany of facts, direct and circumstantial, which are here assumed to be true, including the assets, monetary benefits, and profits ultimately obtained by SHRG from the acquisition of FOG,[67] embracing and adopting the fraudulent schemes (both the PNFS and the CSFS),[68] that Thatch had manifest knowledge of the PNFS and the CSFS and that they were illegal,[69] that the Plaintiffs would never be remunerated their investments or equity interests,[70] and that he took efforts to conceal the CSFS and the PNFS from Plaintiffs,[71] as well as the SEC and the investing public.[72]

---

[62] *Id*.

[63] *In re Key Energy Services*, 166 F. Supp. 3d at 833.

[64] *See* Compl. at Count 2, ¶¶ 146(a) (allegations as to all defendants establishing motive), (b), c(x)), and factually supported further at ¶¶ 72-100.

[65] Compl. at ¶ 146.

[66] Compl. at ¶ 146.

[67] Compl. at ¶ 146(a).

[68] Compl. at ¶ 146(a).

[69] Compl. at ¶ 146 (c(x)).

[70] Compl. at ¶ 146 (c(x)).

[71] Compl. at ¶ 146 (c(x)).

[72] Compl. at ¶¶ 100, 110.  Plaintiffs' Count 2 also incorporated the detailed factual allegations of the CSFS by reference in the Scienter subsection of this claim.  *Id*. at ¶ 146(b).

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                              **14**

Plaintiffs' allegations more than meet the scienter-pleading requirements required in this District, and Thatch's fraudulent intent may be inferred, because they establish Thatch's motive [and opportunity] to commit securities fraud (*e.g.*, secreting the schemes from Plaintiffs, the SEC and the investing public, as well as reaping profits from the acquisition of FOG). Plaintiffs' have also satisfied the scienter pleading requirements by adequately pleading facts establishing strong circumstantial evidence of severe recklessness, as well as alleging circumstances indicating and corroborating conscious behavior on the part of Thatch in this regard.

### c. Plaintiffs have adequately pled reliance and proximate cause.

While Thatch's Motion addresses Plaintiffs' alleged failure to adequately plead reliance and proximate cause in the context of common law fraud (and he incorporates those arguments and authorities in the securities fraud context),[73] Plaintiffs address those arguments here, which are equally applicable to Plaintiffs' reliance and proximate cause arguments in the context of their other causes of action, unless noted otherwise.

Thatch's reliance and proximate cause arguments (in the context of common law fraud and otherwise) are predicated upon the misconception that Plaintiffs' allegations against him are directed solely to his "indication of no irregularities" in connection with Plaintiffs' investments as part of the PNFS.[74] As pointed out above, this is not the case and not how Plaintiffs' case is pled. Plaintiffs' fraud and fraud-based claims directed to Thatch are not limited as such and arise primarily from Thatch's actionable silence, omissions, and nondisclosures of material facts—

---

[73] Motion at 12-13 (addressing reliance in the context of common law fraud), 14 (addressing proximate cause in the context of common law fraud), 15 (addressing reliance and proximate cause "as demonstrated above").

[74] *See* Motion at 12-14.

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                      **15**

omissions that were so misleading as to constitute a "positive misrepresentation of fact[s]."[75]  In fact, Thatch argues nothing (and cites no authority) in support of his reliance and proximate cause arguments in the context of actionable omissions.

"Courts in Texas have uniformly held that 'reliance is ordinarily a question of fact. . .and is not a proper matter for dismissal on the pleadings.'"[76] The law is clear that a party satisfies its pleading requirements (under both Rules 9 and 12(b)(6)), and that a party sufficiently alleges it relied on the other party's omission to its detriment, thus proximately causing harm, when it pleads: (1) that the omission(s) were a substantial factor in the harm without which no harm would have occurred; and (2) that the harm was foreseeable to a person of ordinary intelligence.[77]  Justifiable reliance is also sufficiently pled when the record (here, the Complaint's allegations, considered as a whole and in a light most favorable to plaintiff), show the plaintiff "(1) actually relied on the information; and (2) the reliance was reasonable." [78] Allegations of reliance may also be conclusory, because "this is inherently true of reliance allegations," one either relied or did not.[79]

---

[75] *Mora v. Koy*, CIV.A. H-12-3211, 2013 WL 2289887, at *3 (S.D. Tex. May 23, 2013) (internal Texas citations omitted); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 820 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Services, Inc.*, 925 F.3d 727 (5th Cir. 2019) ("A duty to disclose arises only from 'a fiduciary *or other similar relation of trust and confidence* between [parties]. . .'") (internal citations omitted and emphasis added).

[76] *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 772 (S.D. Tex. 2007) (citing *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 30 (Tex. App. 2005) ).

[77] *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F.Supp.2d 798, 811-813 (S.D. Tex. 2009).

[78] *Janvey v. Willis of Colorado Inc.*, 2014 WL 12670763 (N.D. Tex. Dec. 5, 2014), *citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 501-02 (5th Cir. 2000).

[79] *Steiner v. Southmark Corp.*, 734 F. Supp. 269 (N.D. Tex. 1990). *See also In re Enron Corp. Securities, Derivative & ERISA Litig.*, 2010 WL 9077875 (S.D. Tex. Jan. 19, 2010), holding that "To determine whether reliance is justifiable, the courts must ask, given the plaintiff's individual characteristics, abilities, and appreciation of the facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there was actual reliance by the plaintiff" (*i.e.*, recognizing a presumption in favor of reliance at the pleading stage).

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                                    **16**

Plaintiffs have satisfied these pleading standards, with allegations of both individual and general reliance.[80]  Plaintiffs would simply point out that they have set forth specific allegations of reliance and proximate cause (as well as damages) directed to Thatch's conduct for their Count 2 securities fraud cause of action (which were incorporated by reference in their causes of action for statutory fraud, common law fraud and fraud by non-disclosure), thus refuting Thatch's arguments that Plaintiffs' insufficiently pled the elements of reliance and proximate cause.[81]

### 1.  Plaintiffs' allegations of Texas statutory fraud (Count 3).

Plaintiffs' Complaint also contains sufficient factual matter to state a claim for statutory fraud under TEX. BUS. & COM. CODE § 27.01(a, d).  To survive a motion to dismiss a claim for statutory fraud, Plaintiffs need only allege: (1) there was a transaction involving real estate or stock in a corporation; (2) during the transaction, the defendant made a false representation of a past or existing material fact, a false promise, or benefited by not disclosing a third party's representation or promise was false; (3) the representation or promise was made to induce the plaintiff to enter into a contract; (4) the plaintiff relied on the representation or promise by entering into the contract; and (5) the plaintiff's reliance caused injury.[82]

As with other species of fraud, a Texas statutory fraud claim may be predicated upon a party's omissions.[83]  While Thatch only gives short shrift to his arguments seeking dismissal of Count 3, and simply relies on its arguments addressing Plaintiffs' common law fraud claims

---

[80] *See, e.g.*, Compl. at Count 2, ¶¶ 139(a), 140(a-c), 142-144.

[81] *See* Compl. at Count 2, ¶¶ 142-144 (proximate cause and reliance), 145, 147-148 (damages) and factually supported further at ¶¶ 72-100; *see also* Compl. at Count 3 (statutory fraud), ¶¶ 158-159, Count 4 (common law fraud) ¶¶ 172-173, Count 5 (fraud by nondisclosure) ¶ 187 .

[82] *See generally* TEX. BUS. & COM. CODE § 27.01 (a), (d); *see also Wash Techs. of Am. Corp. v. Pappas*, 05-16-00633-CV, 2018 WL 718550, at *6–7 (Tex. App.—Dallas Feb. 6, 2018, pet. denied) (Upholding jury finding a party liable for the misrepresentations of a third party that were adopted or ratified by the party).

[83] *See, e.g.*, *In re Enron Corp.*, 490 F. Supp. 2d at 822.

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                    **17**

(arguments that completely ignore Plaintiffs' allegations of Thatch's silence, omission and nondisclosures, which are set out above), Thatch also ignores the operative language of Section 27.01(d) that provides that a party may be held liable for failing to disclose the falsity of representations made by others – here, at a minimum, those representations made by his co-conspirators and co-defendants Oblon, Brock, and Bollinger.[84]

Plaintiffs satisfy this standard, because the Complaint alleges Thatch is liable for statutory fraud on grounds that: (1) Thatch made what is tantamount to a false representation by omitting both past and then-existing material facts,[85] and also (2) that Thatch benefited from the false representations of at least Defendants Oblon, Brock, and Bollinger and by not disclosing that the representations made to Plaintiffs by co-conspirators and co-defendants Oblon, Brock and Bollinger were false,[86] and that Thatch's silence, omissions, and nondisclosures are actionable because he failed to inform Plaintiffs that his co-conspirators' statements and omissions were false.[87]

### 2.  Plaintiffs' allegations of Texas common law fraud and fraud by non-disclosure (Counts 4 and 5).

Plaintiffs Complaint contains sufficient factual matter to state a claim for common law fraud and fraud by nondisclosure (Counts 4 and 5, respectively). The Texas Supreme Court has stated  the elements of common law fraud as:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered

---

[84] Motion at 17.

[85] *See, e.g.*, Compl. at ¶¶ 92, 110, 137(a), 138, 140(a-c), 141.

[86] *See, e.g.,* Compl. at ¶¶ 124(d), 130, 130(a), n.18, n.19, 146, 146(a), n.20, 153, 154, 217.

[87] *See, e.g.*, Compl. at ¶¶ 92, 110, 137(a), 138, 140(a-c), 141, 154, 156, 158.

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                                **18**

injury.[88]

Fraud by nondisclosure is a subcategory of fraud.[89]   The elements of fraud by nondisclosure are:

> (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a  result of acting without that knowledge.[90]

Each of these causes of action – as directed to Thatch – are predicated upon his actionable silence, omissions, and nondisclosures, amply detailed in the Complaint and addressed in the preceding paragraphs. As discussed above, Plaintiffs' have alleged more-than-speculative, non-conclusory facts that: (1) Thatch had actual knowledge of the PNSF,[91] (2) Thatch had actual knowledge of the CSFS,[92] (3) that the CSFS was held out to Plaintiffs' as an insider-trading scheme,[93] (4) that the PNSF and the CSFS were unlawful and fraudulent,[94] (5) that Thatch was one of the architects of the CSFS "plan,"[95] (5) that Thatch owed Plaintiffs duties to disclose true

---

[88] *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)).  Some authorities set forth the elements of common law fraud to include the "concealment" or "omission" of a material fact.  *See, e.g., In re Enron Corp*., 490 F. Supp. 2d at 793-4 (citing several authorities); *see also American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 435–37 (Tex. 1997) ("Fraud may consist of both active misrepresentation and passive silence.").

[89] *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).

[90] *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied).

[91] *See, e.g.*, Compl. at ¶¶ 68-70, 107, 109, 112, 116, 130(a, c), n. 19, 137(b), 139(a), n.20, 146(a), 146 (c)(x).

[92] *See, e.g.*, Compl. at ¶¶ 68-70, 76, 99, 107, 109, 112, 116, 130(a, c), n. 19, 137(b), 139(a), n.20, 146(c)(x).

[93] *See, e.g.*, Compl. at ¶¶ 73, 82, 137(a).

[94] *See, e.g.*, Compl. at ¶¶ 68, 76, 92, 99, 107, 109, 130(a), 137(b), 139(a), n.20, 146(c)(x).

[95] *See, e.g.*, Compl. at ¶¶ 73, 75, 140(a-c).

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                                       **19**

facts,[96] (6) the reasons why Thatch owed Plaintiffs such a duty,[97] and (7) that Thatch breached those duties by his silence, omission, and nondisclosures for failing to disclose the true facts to Plaintiffs knowing they were not aware of them and did not have an equal opportunity to discover the truth due to his and other Defendants' actions.[98]

These facts, as described more fully herein and alleged in Plaintiffs' Complaint, easily satisfy the pleading requirements of Rules 9(b) and 12(b)(6) and the decisional authorities of the Fifth Circuit and this District.

### 3. Plaintiffs' allegations of their fraud-related claims of unjust enrichment, civil conspiracy, aiding and abetting and accounting (Counts 6-9).

For the reasons set forth above, Plaintiffs have more than adequately pleaded viable causes of action for their fraud-based claims. As a result, and contrary to Thatch's suggestions otherwise,[99] because Plaintiffs' fraud-based claims are sufficiently pleaded under Rule 12(b)(6) and Rule 9, so too are Plaintiffs' claims of unjust enrichment, civil conspiracy, aiding and abetting, and accounting. Moreover, Thatch fails to recognize that he can be held independently liable for each of these fraud-related causes of action—even if he is not a primary actor in the actual fraudulent act itself—as a co-conspirator,[100] as one who aides and abets securities fraud,[101] and/or

---

[96] *See, e.g.*, Compl. at ¶¶ 70, 92, 99, 100, 109, 140(a-c), 181-183.

[97] *See, e.g.*, Compl. at ¶¶ 70, 92, 99, 100, 109, 140(a-c), 181-183.

[98] *See, e.g.*, Compl. at ¶¶ 92, 110, 137(a), 138, 140(a-c), 141.

[99] Motion at 20.

[100] *Eagle Metal Products, LLC v. Keymark Enterprises, LLC*, 651 F. Supp. 2d 577, 591 (N.D. Tex. 2009) ("In Texas, conspiracy allegations, if shown, may extend liability beyond the primary actor to others who agreed to act towards a common goal.").

[101] *See, e.g., Abbott v. Equity Group, Inc.*, 2 F.3d 613, 621 (5th Cir. 1993) ("Those who aid and abet securities fraud are subject to Rule 10b–5 liability.") (internal citations omitted); *see also Immobiliere Jeunesse Etablissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

as one who benefits from and is unjustly enriched from the fraudulent act of another.[102]

## CONCLUSION

The Plaintiffs' allegations directed toward Thatch are neither conclusory, speculative, nor a formulaic recitation of the elements of a federal securities fraud cause of action under Rule 10b-5.  Instead, they have, at a minimum, set forth enough facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements" of this cause of action, thus satisfying Rule 12(b)(6).  Further, the Plaintiffs' fraud-based allegations clearly set forth the requisite facts to specify the type of facts Thatch omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made Thatch's representations, as well as his co-conspirators' representations, misleading.  Plaintiffs Complaint satisfies Rule 12(b)(6) and Rule 9(b), and Thatch's Motion should be denied.

Respectfully submitted this the 5th day of February 2021.

By:/s/ Stephen W. Abbott

Tom Bayko
Texas Bar No. 01864500
Matthew J.M. Prebeg
Texas Bar No. 00791465
Christopher M. Faucett
Texas Bar No. 00795198
Stephen W. Abbott
Texas Bar No. 00795933
Brent T. Caldwell
Texas Bar No. 24056971
**BAYKO, PREBEG, FAUCETT & ABBOTT PLLC**
8441 Gulf Freeway, Suite 307
Houston, Texas 77002
Tel: (832) 742-9269
Fax: (832) 742-9261

---

[102] *Renwick v. Bonnema*, CIV.A. 2:08-CV-337-TJW, 2009 WL 393967, at *2 (E.D. Tex. Feb. 13, 2009) ("A party may recover under an unjust enrichment theory 'when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage.'"), *citing Heldenfel Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992).

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**THATCH'S MOTION TO DISMISS**                                                                  **21**

tbayko@bpfalawfirm.com
mprebeg@bpfalawfirm.com
cfaucett@bpfalawfirm.com
sabbott@bpfalawfirm.com
bcaldwell@bpfalawfirm.com

Aaron M. McKown
Texas Bar No. 24081612
(application for admission/*pro hac vice* to be filed)
Andrew M. Sussman
California Bar No. 112418
(*pro hac vice* to be filed)
**MCKOWN BAILEY**
3334 E. Coast Hwy #705
Corona del Mar, CA 92625
(949) 878-6878
aaron@mckownbailey.com
andrew@mckownbailey.com

**COUNSEL FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 5, 2021, a true and correct copy of the foregoing document was served on all counsel of record through Court's electronic filing system.

*/s/ Brent Caldwell*
Brent Caldwell