UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DENNIS BURBACK, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-946-SDJ |
| | § | |
| ROBERT OBLON, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant John "JT" Thatch's Motion to Dismiss for Failure to State a Claim and Brief in Support, (Dkt. #19), and Defendants Jordan Brock and Alchemist Holdings, LLC's Motion to Dismiss and Brief in Support, (Dkt. #39). The Court, having considered the motions and the applicable legal authorities, concludes that both motions should be **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

Plaintiffs Dennis Burback, Ken Eddy, and Mark Anderson are individual investors who participated in two securities-related transactions that they allege were part of two fraudulent schemes. Plaintiffs have alleged various fraud causes of action arising from these schemes against individual defendants Thatch, Brock, Robert Oblon, and Jeff Bollinger; entity defendants FourOceans Global LLC ("FOG"), Four Oceans Holding, Inc. ("FOHI"), Alchemist Holdings, LLC ("Alchemist"), Elepreneurs U.S., LLC ("Elepreneurs"), Elevacity U.S., LLC ("Elevacity"), Sharing Services Global Corporation ("SHRG"), and Custom Travel Holdings, Inc. ("CTH"); and five Doe defendants.

1

Specifically, the first scheme alleged is the "Promissory Note-Fraud Scheme" ("PNFS"). As part of the PNFS, Oblon and Brock allegedly made false representations to Plaintiffs, which ultimately resulted in Plaintiffs investing in FOG on or about September 10, 2015, through the execution of Note Purchase Agreements for securities in unregistered transactions. (Dkt. #1 ¶¶ 41–42). It became apparent to Plaintiffs in approximately the "February to March 2016 timeframe" that "Oblon had failed and FOG would be a failure." (Dkt. #1 ¶ 49). After discussing with Plaintiffs that FOG may be pivoted into other business ventures, Oblon informed Plaintiffs that "the FOG business plan, model, and its principal assets were migrated into the Elevacity and/or Elepreneurs ventures." (Dkt. #1 ¶¶ 50–51). Oblon took this step "without informing FOG members, including Plaintiffs . . . ." (Dkt. #1 ¶ 51). "Elepreneurs, Elevacity, and/or FOHI" were later "acquired by SHRG on or about October 9, 2017." (Dkt. #1 ¶ 36). Plaintiffs did not receive compensation, such as revenue share or interest, that they otherwise were entitled to under the Note Purchase Agreements. (Dkt. #1 ¶¶ 52–57).

The second scheme alleged in the complaint is the "CTH Stock-Fraud Scheme" ("CTHS"). *See* (Dkt. #1 ¶ 72). As part of the CTHS, in February 2018, Plaintiffs, through Eddy, inquired with Defendant Thatch about their investments, and Thatch "indicated that there were no irregularities with the FOG investments." (Dkt. #1 ¶ 72). Eddy then expressed his concerns to Brock, who also "indicated that there were no irregularities with the FOG investments." (Dkt. #1 ¶ 73).

Brock also informed Plaintiffs, through Eddy, that he, Oblon, Thatch, and Bollinger "had a 'plan' to get Plaintiffs their ownership and equity interests in FOG converted into stock in Oblon's 'new company.'" (Dkt. #1 ¶ 73). In April 2018, Brock "indicated" to Plaintiffs that the individual defendants were "working on the value of the vehicle to make this happen." (Dkt. #1 ¶¶ 74–75). A couple months later, Brock, Bollinger, and Plaintiffs attended a call in which Bollinger "explained the details of his, Oblon's, Brock's, and Thatch's 'plan' and falsely represented that FOG had been dissolved, but that Plaintiffs would get stock in Oblon's new company SHRG." (Dkt. #1 ¶¶ 76–78). Bollinger then explained that for the transaction to be completed without raising concerns with the SEC, "Plaintiffs would have to transfer and assign their interests in FOG to CTH." (Dkt. #1 ¶ 78).

Plaintiffs subsequently entered into the Subscription Agreements to acquire CTH stock securities in unregistered transactions. (Dkt. #1 ¶ 79). Prior to this transaction, "Brock and Bollinger made clear to Plaintiffs that they had foreknowledge of a pending acquisition of CTH by SHRG" but also said that this acquisition was not public knowledge and Plaintiffs were not supposed to know about it. (Dkt. #1 ¶ 80). Brock and Bollinger explained that after the acquisition occurred, Plaintiffs' stock in CTH would be converted to SHRG stock, which they could then sell to recoup their original investment. (Dkt. #1 ¶ 80). On July 26, 2018, Brock informed Plaintiffs that SHRG was in the process of acquiring CTH and that a settlement and release agreement would need to be executed in favor of FOG. (Dkt. #1 ¶ 85). These agreements were never executed by FOG. (Dkt. #1 ¶ 88).

On or about June 1, 2019, Brock informed Plaintiffs that "the deal for SHRG to purchase CTH was not going to happen and that because FOG was dissolved, the 'plan' they made to attempt to compensate Plaintiffs had fallen through, they were simply out of luck and that their investment, commissions, and their ownership and equity interests were lost." (Dkt. #1 ¶ 90). A few months later, Bollinger informed Plaintiffs that CTH would be merged into Alchemist, which was the entity holding shares of SHRG, and that Plaintiffs should accordingly execute the proposed settlement agreements. (Dkt. #1 ¶ 94). This merger did not occur, and Bollinger informed Plaintiffs that Oblon left Alchemist. (Dkt. #1 ¶ 97).

Based on these allegations, Plaintiffs assert eleven causes of action against various defendants: (1) securities fraud relating to the PNFS; (2) securities fraud relating to the CTHS; (3) statutory fraud under TEX. BUS. & COM. CODE § 27.01; (4) common law fraud; (5) fraud by nondisclosure; (6) unjust enrichment; (7) civil conspiracy; (8) aiding and abetting; (9) accounting; (10) imposition of a constructive trust; and (11) breach of fiduciary duty.

Thatch, Brock, and Alchemist now move to dismiss Plaintiffs' claims against them for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). For reasons explained below, the motions are granted in part and denied in part.

## II. LEGAL STANDARDS

Rule 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility. . . ." *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation omitted). Legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To determine whether the plaintiffs have pleaded enough to "nudge[] their claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Id.* at 679–80 (quoting *Twombly*, 550 U.S. at 570).

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement.[1] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333,

---

[1]     Plaintiffs argue that the particularity requirement should be "relaxed" in this case because "the alleged fraud occurred over an extended period of time and consists of numerous acts." (Dkt. #26) (quoting *Foster v. Bristol-Myers Squibb Co.*, 587 F.Supp.2d 805, 821 (E.D. Tex. 2008). However, as this Court clarified in *Gilmour, Tr. for Grantor Trusts of Victory Med. Ctr. Craig Ranch, LP v. Blue Cross & Blue Shield of Alabama*, No. 4:19-CV-160-SDJ, 2021 WL 1196272, at *7 (E.D. Tex. Mar. 30, 2021), the relaxation of Rule 9(b) is applicable

339 (5th Cir. 2008); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Given the plain meaning of the text, the Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)), *cert. denied,* 558 U.S. 873, 130 S.Ct. 199, 175 L.Ed.2d 125 (2009).

Mindful of these standards, the Court now examines the substance of the motions to dismiss.

### III. DISCUSSION

## A. Count 1 Is Barred by The Statute Of Repose As To Brock.

In count 1 of the complaint, Plaintiffs assert securities fraud claims under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 against multiple defendants including, as relevant here, Brock. In his motion, Brock argues that count 1 should be dismissed as to him because it is time-barred by either the five-year statute of repose or, alternatively, the two-year statute of limitations. (Dkt. #39 at 7). As to the latter, Plaintiffs argue that none of their claims are barred by the statute of

---

only to plaintiffs suing under the False Claims Act and is not applicable here. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188–89 (5th Cir. 2009).

limitations because their claims did not accrue until after Plaintiffs could have discovered Brock's fraud, which they say was "shortly before filing suit." Plaintiffs also argue that the statute of repose did not begin to run until, at the earliest, Spring 2016 because, in their view, that is when "the last culpable act or omission" occurred. (Dkt. #26 at 9–10). For the reasons explained below, the Court agrees that count 1 of the complaint as to Brock is barred by the statute of repose.

A statute of repose is "intended to give defendants complete protection from litigation after a defined period of time has passed" and is not subject to tolling. *In re BP p.l.c. Sec. Litig.*, 341 F.Supp.3d 698, 704 (S.D. Tex. 2018). The applicable statute of repose, 28 U.S.C. § 1658(b), bars all private rights of action involving a claim of fraud in contravention of the securities laws five years after such violation. The five-year period begins to run upon "the last culpable act or omission of the defendant." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 n.1, 201 L. Ed. 2d 123 (2018).

An act or omission is culpable under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 if it occurs "in connection with the purchase or sale of any security." *See* 15 U.S.C. § 78j(b)) and 17 C.F.R. § 240.10b-5. For fraud to occur "in connection with" the sale of securities, "the scheme to defraud and the sale of securities [must] coincide." *S.E.C. v. Zandford*, 535 U.S. 813, 822, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002). Fraud coincides with the sale of securities if it is "more than tangentially related" to the sale. *Roland v. Green*, 675 F.3d 503, 520 (5th Cir. 2012), *aff'd sub nom. Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 134 S.Ct. 1058, 188 L.Ed. 2d 88 (2014).

Plaintiffs' complaint was filed on December 11, 2020. Looking to the face of the complaint, the relevant sale of securities that forms the basis of count 1 occurred on September 15, 2015—more than five years before the filing of the complaint. Plaintiffs argue that although the relevant stock was purchased in September 2015, "Defendants migrated Plaintiffs' investments in FOG to other entities . . . in the Spring of 2016 and . . . in October 2017, all of which was part of Defendants' ongoing fraud . . . ." (Dkt. #45 at 10). Plaintiffs also point to alleged misrepresentations Brock made in 2018 regarding the stock that was purchased in September 2015 as conduct that would begin the running of the statute of repose. (Dkt. #45 at 10). Defendants argue that any post-sale conduct, including the September 2016 and October 2017 transactions and the 2018 misrepresentations, cannot be a "culpable act or omission" under federal securities law such that it would cause the statute of repose to run from that later date. (Dkt. #53 at 2–4).

The decision in *Sec. & Exch. Comm'n v. Mapp*, 240 F.Supp.3d 569, 580 (E.D. Tex. 2017), is instructive regarding the 2018 misrepresentations. In *Mapp*, the court rejected an argument made by the SEC that a defendant could be liable for communications following an investment because "statements following a sale of securities are not made in connection with the purchase or sale of securities." 240 F.Supp.3d at 580 (cleaned up). The same reasoning applies here. Accordingly, the alleged 2018 misrepresentations Plaintiffs point to were not "culpable conduct" that restarted the running of the statute of repose.

Plaintiffs have cited a collection of out-of-circuit cases to support their proposition that "lulling activities" designed to suppress the discovery of a fraudulent scheme—such as the subsequent transactions or the 2018 misrepresentations in this case—"may comprise part of an actionable 'scheme to defraud'" such that the statute of repose should begin to run at the time of the "lulling activities" rather than at the time of the original transaction. (Dkt. #59 at 15 n.23).

These cases are distinguishable as none of them address the statute of limitations or the statute of repose. Instead, the decisions relied upon by Plaintiffs primarily deal with evidentiary issues that are inapplicable here. In the first case Plaintiffs cite, *United States v. Kelley*, the court explained that the use of "bogus account statements to lull defrauded investors," the asserted lulling conduct, "is not in and of itself a securities law violation." 551 F.3d 171, 172 (2d Cir. 2009). Such statements were relevant as evidence of the defendant's intent to defraud and the scope of his schemes but not as proof of independent violations of Section 10(b). *Id.* at 175–76.

Similarly, in *S.E.C. v. Holschuh*, the court acknowledged that the appellant's argument that a violation of the securities laws cannot be based on events occurring after the completion of a sale may have merit, but in that case "Mr. Holschuh's conduct prior to the sale clearly satisfied the 'in connection with' requirement, and his subsequent lulling activities, which the court found to be part of a single scheme or plan, simply related back to the earlier fraudulent conduct." 694 F.2d 130, 143 (7th Cir. 1982). The district court could properly consider the subsequent lulling activities

9

because "they were evidence of a scheme which, viewed as a whole, was sufficiently closely connected to the sale and was relevant to the question of intent." *Id.* Plaintiffs' reliance on *United States v. Riedel*, 126 F.2d 81, (7th Cir. 1942), is similarly misplaced. In that case, the court did not determine whether the conduct at issue was "in connection with the purchase or sale of a security" but simply noted the unobjectionable proposition that a "scheme to defraud may well include later efforts to avoid detection of the fraud." *Id.* at 83.

Finally, *Sec. & Exch. Comm'n v. Yin Nan Michael Wang*, CV-1307553-JAKSSX, 2015 WL 12656906 (C.D. Cal. Aug. 18, 2015) and *U.S. v. Jones*, 712 F.2d 1316 (9th Cir. 1983), likewise fail to support Plaintiffs' arguments. In *Yin*, the court only discussed the defendant's "lulling" activities when examining the evidence of the defendant's fraudulent intent, not when determining whether the defendant committed any culpable act under the securities laws. 2015 WL 12756906, at *17. In fact, in determining whether the conduct at issue was actionable, the district court focused on the timing of the fraudulent conduct. *Id.* at *18 (holding that fraudulent conduct was actionable when it "occurred at the same time" as the transaction). *Jones* is also inapplicable as the discussion of "lulling" activities in that case concerned the fact that sending "lulling" notices in the mail provides jurisdiction over securities fraud claims. 712 F.2d at 1322.

As for the subsequent transactions, Plaintiffs do not allege that these transactions could independently form the basis of a securities fraud claim; instead, they are essentially attempting to apply a "continuing fraud" exception to the statute

of repose. *See* (Dkt. # 45 at 10 ("Plaintiffs allege Defendants migrated Plaintiffs'
investments in FOG to other entities . . . all of which was part of Defendants' *ongoing
fraud* that ultimately came to fruition in the subsequent, but interrelated CSFS.")) 
(emphasis added). This argument is unavailing because there is no continuing fraud
exception to the statute of repose.

In *Wolfe v. Bellos*, the plaintiff attempted to argue that the statute of repose
for her securities fraud claim stemming from a September 8, 2004 transaction did not
begin to run until the end of the defendant's "fraudulent scheme." No. 3:11-CV-02015-
L, 2012 WL 652090, at *6 (N.D. Tex. Feb. 28, 2012). The court noted that plaintiff's
"fraudulent scheme argument . . . is akin to a continuing wrong or fraudulent
concealment theory premised on equitable tolling." *Id.* In rejecting this argument,
the court held that the statute of repose was not subject to equitable tolling, thus the
statute of repose ran from the date of the original transaction. *Id.*

Similarly here, Plaintiffs' attempt to rely on allegations of an ongoing scheme
does not save their claims as the statute of repose runs from the date of the securities
violation, not the end of the fraudulent scheme. 28 U.S.C. § 1658(b)(5) (stating that a
claim for a violation of the securities laws may not be brought later than "5 years
after such violation."). Furthermore, even if the subsequent transactions
could  independently constitute "culpable" conduct under the securities laws, the
complaint is devoid of any specific allegations that Brock performed any "culpable act
or omission" as a part of these subsequent transactions. *See China Agritech*, 138 S.
Ct. at 1804, n.1 (explaining that the statute of repose "begins to run upon the last

11

culpable act or omission of the *defendant*." (emphasis added)). Thus, even if such subsequent transactions were culpable acts under the securities laws, they were not culpable acts by Brock that would restart the running of the statute of repose as to the claims against him.

Because the statue of repose began to run on the claims in count 1 made against Brock on September 15, 2015, Plaintiffs are barred from bringing those claims. Count 1 of Plaintiffs' complaint against Brock will be dismissed.

## B. Count 2 Fails To State a Claim Against Thatch or Brock.

In count 2 of the complaint, Plaintiffs allege that Thatch and Brock committed securities fraud with respect to Plaintiffs' purchase of stock interests in CTH in June 2018 as part of the CTHS. (Dkt. #1 ¶¶ 79 n.15, 137(a)). As an initial matter, because the claims in count 2 are brought under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, Plaintiffs must meet the pleading standards under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78(u)-4(b)(1). The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78(u)-4(b)(1).

The Fifth Circuit has recognized that "the effect of the PSLRA in this respect is to, *at a minimum*, incorporate the standard for pleading fraud under Fed. R. Civ. P. 9(b)." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (cleaned up). This is because "[t]he PSLRA was enacted, in part, to compensate for

the perceived inability of Rule 9(b) to prevent abusive, frivolous strike suits." *Id.* at 354 (internal quotation omitted). If the complaint fails to meet the standards of the PSLRA, then the court must, on the defendant's motion, dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A).

Against this backdrop, to state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead "(1) a misstatement or omission; (2) of material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). A misstatement or omission is material if "there is a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.* Scienter is "an intent to deceive, manipulate, defraud or severe recklessness." *Owens v. Jastrow*, 789 F.3d 529, 535–36 (5th Cir. 2015) (quoting *Lormand v. US Unwired, Inc*, 565 F.3d 22, 251 (5th Cir. 2009)). In this context, severe recklessness "is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* (internal quotations omitted). At the 12(b)(6) stage, "the required strong inference of severe recklessness must be more than merely reasonable or permissible—it must be cogent and compelling, thus strong in light of other explanations." *Id.* (cleaned up).

"A reviewing court therefore must 'take into account plausible inferences opposing as well as supporting a strong inference of scienter.'" *Id.* (quoting *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008). "A complaint will survive only if the inference of scienter is 'at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs*, 551 U.S. at 324). In conducting this analysis, courts may first look to the contribution of individual allegations of scienter but must ultimately look holistically at all allegations of scienter to see if they support a strong inference of scienter. *Id.* at 537.

### i. Count 2 fails to state a claim as to Thatch.

Plaintiffs allege that Thatch committed securities fraud by "indicat[ing] to Plaintiffs . . . that there were no irregularities with the Plaintiffs' investments in FOG" and by failing to inform them of the fraudulent nature of the CTHS. (Dkt. #1 ¶¶ 139(a), 140(a)). Thatch argues, among other things, that his "indication of no irregularities" is not material and thus cannot be the basis of Plaintiffs' fraud claims. (Dkt. #19 at 15). The Court agrees with Thatch.

In *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,[2] the defendant stated that the relevant company was in "sound financial condition" seven and ten months prior, respectively, to the completion of two contracts involving the company.

---

[2]    Although *Shandong* involves a claim for fraud under Texas law rather than the securities laws, the materiality standard under Texas law is substantially similar to the materiality standard applicable to Plaintiffs' securities claims. *See Shandong*, 607 F.3d at 1033 ("A false representation is material if a reasonable person would attach importance and be induced to act on the information.").

607 F.3d 1029, 1033 (5th Cir. 2010). On appeal, the Fifth Circuit concluded that these allegations were insufficient to meet the pleading requirements of Rule 9(b) because the statement "sound financial condition" is "inherently vague and ambiguous," especially when the plaintiff failed to plead that the defendant "presented any detailed, corroborating information, facts or figures to support the statement that might entice a reasonable person to attach importance to the statement." *Id.* The Fifth Circuit also held that the statement was too attenuated from the execution of the contracts to be material because the contracts were executed between seven and ten months after the defendant made the statement. *Id.* Finally, the court explained that the statement was not material given the course of dealings between the parties, which showed that the Plaintiff knew that the relevant company had made late payments. *Id.*

Allegations of an "indication" without more are insufficient to meet the standard for pleading a material misrepresentation under Rule 9(b) because the word "indication" is vague as to what Plaintiffs are alleging Thatch did. For example, it is unclear if an indication is an actual statement or mere silence. This indication also occurred several months before the relevant stock purchase in June 2018, and Plaintiffs fail to allege facts showing this indication was material to their decision to purchase CTH stock at that time. And, as in *Shandong*, the course of dealings between the parties demonstrates that Plaintiffs already knew there may have been some irregularities with the FOG investment. *See* (Dkt. #1 ¶ 51) ("In approximately March of April of 2016, Defendant Oblon informed Plaintiffs that the FOG business

plan, model, and its principal assets were migrated into the Elevacity and/or Elepreneurs ventures. Oblon had taken this step without informing FOG members, including Plaintiffs . . . .")). Accordingly, Plaintiffs have failed to allege sufficient facts to establish that this misrepresentation standing alone would have assumed "actual significance in the deliberations of the reasonable shareholder." *See Southland Sec. Corp.*, 365 F.3d at 362. In fact, the complaint establishes that Plaintiffs remained concerned about irregularities after Thatch's statement and conferred with other defendants about these concerns after the call with Thatch. *See* (Dkt. #1 ¶ 73).

Even to the extent this indication was "material," Plaintiffs also fail to adequately allege facts demonstrating that the statement was false at the time it was made. Instead, they rely on conclusory allegations of falsity, which are insufficient to satisfy the standards of Rule 9(b). *See* (Dkt. #1 ¶ 21) ("This representation was false and Thatch either knew it was false at the time the representation was made, or made the false representation without regard to its truth or falsity.")).

Thatch also argues that Plaintiffs' allegations of scienter are insufficient because all the allegations regarding Thatch's knowledge of and failure to disclose any wrongful conduct are "predicated entirely upon either information and belief or sheer unsupported speculation and conjecture." (Dkt. #19 at 15). Plaintiffs respond that they have satisfied the scienter-pleading requirements "because [their allegations] establish Thatch's motive and opportunity to commit securities fraud" and they "adequately plead[] facts establishing strong circumstantial evidence of severe recklessness, as well as alleg[e] circumstances indicating and corroborating

conscious behavior on the part of Thatch in this regard." (Dkt. # 26 at 15).  The Court agrees with Thatch that Plaintiffs' allegations of scienter are insufficient.

To establish scienter, Plaintiffs appear to rely in large part on Thatch's alleged knowledge of the fraudulent schemes, Thatch's role as CEO of SHRG, and the benefits SHRG allegedly received because of these schemes.[3] But even when viewed holistically, these allegations are insufficient to support a *strong* inference of scienter. Plaintiffs base their allegations that Thatch had knowledge of the fraudulent schemes upon information and belief. *See* (Dkt. # 1, ¶¶ 137(b), 146(c)(x)). While fraud pleadings regarding facts solely within the opposing party's knowledge may be based upon information and belief, "this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Rather, when allegations are made on information and belief, the complaint must "state with particularity all facts on which that belief is formed, *i.e.*, set forth a factual basis for such belief." *Walker v. Rent-A-Ctr.*, No. 5:02-CV-3-DF, 2005 WL 8161388, at *8 (E.D. Tex. July 25, 2005) (quoting *ABC Arbitrage*, 291 F.3d at 350). Because the complaint fails to set forth with particularity any facts upon which Plaintiffs' belief of Thatch's knowledge is formed,

---

[3]    *See* (Dkt. #1, ¶¶ 146, 146(a), 146(c)(x)) ("[D]efendants had a motive to operate and benefit from the operation of the CTH Stock-fraud scheme"; "SHRG now shows an operating profit of millions of dollars per year"; "Thatch, having full knowledge of, and ultimately embracing and adopting the fraudulent conduct"; "Defendant Thatch knew he was not complying with existing laws and regulations with respect to the CTH Stock-fraud schemes. . . . Defendant Thatch also knew that the CTH Stock-Fraud scheme was illegal. . . . Defendant Thatch had actual, personal knowledge (or constructive knowledge) of the material misrepresentations, omissions and conduct directed to Plaintiffs regarding the CTH Stock-Fraud schemes . . . or came to know of them."); (Dkt. #26 at 14) (arguing that scienter can be inferred from Thatch's "manifest knowledge" and the profits obtained by SHRG).

these allegations are insufficient to support an inference of scienter and do not amount to more than conclusory allegations.

Similarly, Thatch's role as CEO of SHRG, without more, is insufficient to support an inference of scienter. *See Hall v. Rent-A-Ctr., Inc.*, No. 4:16CV978, 2017 WL 6398742, at *27 (E.D. Tex. Oct. 19, 2017), *report and recommendation adopted*, No. 4:16CV978, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017) ("Without more, an officer's position with a company does not suffice to create an inference of scienter." (cleaned up)). Instead, Plaintiffs would need to plead "other special circumstances" for such a position to support the scienter inference. *See id.* Plaintiffs have failed to do so. Additionally, the complaint's allegations that SHRG has profited are irrelevant as to Thatch's scienter without further specific allegations that Thatch has profited.

Finally, when all the allegations regarding scienter are analyzed holistically as required under *Tellabs*, the complaint fails to give rise to a strong inference of scienter on the part of Thatch. *See Tellabs*, 551 U.S. at 324.  Plaintiffs have failed to state a claim under Section 10(b) and Rule 10b-5 against Thatch.

### ii.   Count 2 fails to state a claim as to Brock.

As part of the CTHS, Plaintiffs allege that Brock  fraudulently misrepresented the status of Plaintiffs' investments, and thus violated Section 10(b) and Rule 10b-5, by "indicat[ing] . . . that there were no irregularities," and "indicat[ing] that he and Defendants Oblon, Thatch and Bollinger had a 'plan' to get Plaintiffs their ownership and equity interests in FOG converted into stock in Oblon's 'new company.'" (Dkt.

#1¶¶ 139(b)–(d)). Plaintiffs also allege that Brock's failure to inform them of the fraudulent nature of the CTHS constituted securities fraud. (Dkt. #1 ¶ 140(a)).

Regarding Brock's "indication . . . that there were no irregularities," the analysis is largely the same as Thatch's identical "indication." Although Plaintiffs did not speak to anyone else about their concerns after speaking with Brock, the vagueness of the "indication" allegations, the temporal distance between the indication and the stock purchase, and the fact that Plaintiffs already knew of likely irregularities with their FOG investment lead to the conclusion that Brock's "indication" also was not material. And even to the extent such an indication was material, Plaintiffs fail to allege particularized facts showing it was false when Brock allegedly made it. *See* (Dkt. #1 ¶ 73) ("These representations were false and Brock either knew they were false at the time the representations were made, or made the false representations without regard to their truth or falsity.").

As to Brock's statements about the "plan," Plaintiffs again fail to sufficiently allege facts showing that this statement was false when it was made. Such conclusory allegations are insufficient to support the pleading standard under Rule 9(b) and the PSLRA. *Tuchman*, 14 F.3d at 1068 (5th Cir. 1994). And here, that is all Plaintiffs offer concerning Brock's statements about the "plan." *See* (Dkt. #1 ¶ 73).

Plaintiffs' securities fraud claims against Brock also fail because of Plaintiffs' failure to sufficiently allege Brock's scienter. As with their claims against Thatch, Plaintiffs rely on Brock's alleged knowledge of the fraudulent schemes, Brock's role as President and CEO of SHRG, and the benefits SHRG allegedly received because

19

of these schemes in an attempt to establish Brock's scienter.[4] Again, however, Plaintiffs rely on conclusory statements and information and belief pleading as a basis for their allegations that Brock had knowledge of the fraudulent schemes. *See* (Dkt. # 1 ¶¶ 137(b), 146(c)(ix)). Because the complaint fails to set forth with particularity any facts on which Plaintiffs' allegations of Brock's knowledge are formed, these allegations are insufficient to support a strong inference of scienter. Additionally, for the reasons discussed above regarding Thatch, Plaintiffs' allegations regarding Brock's role with SHRG and the fact that SHRG has profited, when considered with all other allegations of scienter, do not give rise to a strong inference of scienter.

Accordingly, Plaintiffs' securities fraud claims as to both Thatch and Brock will be dismissed.

## C. Counts 3–5 Fail To State a Claim Against Thatch or Brock.

In addition to their securities fraud claims, Plaintiffs also assert state law fraud-based causes of action against Thatch and Brock: statutory fraud claims under Section 27.01 of the Texas Business & Commerce Code and common law fraud and fraud by nondisclosure claims under Texas law. For the reasons explained below,

---

[4]    *See* (Dkt. #1, ¶¶ 146, 146(a), 146(c)(ix)) ("[D]efendants had a motive to operate and benefit from the operation of the CTH Stock-fraud scheme . . . .";"SHRG now shows an operating profit of millions of dollars per year"; "Defendant Brock[,] having full knowledge of, and ultimately embracing and adopting the fraudulent conduct"; "Defendant Brock knew he was not complying with existing laws and regulations with respect to the CTH Stock-fraud schemes. . . . Defendant Brock also knew that the CTH Stock-Fraud scheme was illegal. . . . Defendant Brock had actual, personal knowledge (or constructive knowledge) of the material misrepresentations, omissions and conduct directed to Plaintiffs regarding the CTH Stock-Fraud schemes . . . or came to know of them."); (Dkt. #26, pg. 14) (arguing that scienter can be inferred from Thatch's "manifest knowledge" and the profits obtained by SHRG.")

Plaintiffs also fail to state a claim against Thatch or Brock on any of their state law fraud-based claims.

### i.    Applicable law

A claim for statutory fraud under Section 27.01 of the Texas Business & Commerce Code requires, as relevant here, a false representation of a past or existing material fact made to a person for the purpose of inducing that person to enter into a contract for the sale of stock and relied on by that person in entering into that contract. TEX. BUS. & COM. CODE § 27.01. Notably, a cause of action for statutory fraud differs from common law fraud in that statutory fraud "does not require proof that the false representation was made knowingly or recklessly." *Autoficio, LLC v. Cimble Corp.*, No. 4:17-CV-00404-KPJ, 2020 WL 3209014, at *13 (E.D. Tex. June 15, 2020). A false representation is material under Texas law "if a reasonable person would attach importance to and be induced to act on the information." *Shandong*, 607 F.3d at 1033.

A plaintiff bringing a common law fraud claim for an affirmative misrepresentation under Texas law must show:

> (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Autoficio*, 2020 WL 3209014 at *5.

A "[f]ailure to disclose a material fact is fraudulent only if the defendant has a duty to disclose that fact." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d

574, 586 (5th Cir. 2001). As relevant here, a duty to speak can arise when either: (i) "one party learns later that his previous affirmative statement was false or misleading" or (ii) "one party knows that the other party is relying on a concealed fact, provided that the concealing party also knows that the relying party is ignorant of the concealed fact and does not have an equal opportunity to discover the truth." *Id.*

### ii.   Analysis

Here, the complaint only sets forth one alleged false representation made by Thatch: on a February 20, 2018 phone call, Thatch "falsely indicated that there were no irregularities with the FOG investments." (Dkt. #1 ¶ 72). For the reasons already explained in the Court's discussion of the securities-fraud claims asserted against Thatch, *see supra* Part III.B.i, Plaintiffs have failed to allege sufficient facts demonstrating that this is a material misrepresentation and that this indication was false when made. Similarly, Brock's "indication" is also not a material misrepresentation, and Plaintiffs have failed to demonstrate that Brock's "indication" or his statements regarding a "plan" were false when made.

Plaintiffs cite to *In re Enron Corp. Sec., Derivative & "'ERISA'" Litig.*, 490 F.Supp.2d 784, 822 (S.D. Tex. 2007) for the proposition that a Section 27.01 claim may be predicated upon a party's omissions. *See* (Dkt. #26 at 17). That may be true. But in *Enron*, the court held that the plaintiffs alleged sufficient facts to impose a "duty to disclose *additional* information" because plaintiffs in that case alleged facts demonstrating that the defendants were aware of the falsity of their own reports and

22

failed to issue corrective disclosures. 490 F.Supp.2d at 822 (emphasis added). In the case at bar, Plaintiffs' conclusory allegations are insufficient to satisfy the heightened pleading standard under Rule 9(b). As discussed above regarding Plaintiffs' securities fraud claim, Plaintiffs have failed to sufficiently allege facts demonstrating that Thatch or Brock had knowledge of the alleged schemes that would lead them to know that their various "indications" and statements to Plaintiffs were false and impose upon them a duty to disclose additional information.

Plaintiffs' failure to adequately plead that Brock or Thatch: (i) made material misrepresentations of fact, (ii) knew that their prior statements were false, and (iii) knew of the fraudulent schemes is also fatal to Plaintiffs' claims for common law fraud and fraud by nondisclosure.

Accordingly, Plaintiffs' claims for statutory fraud, common law fraud, and fraud by nondisclosure against Thatch and Brock will also be dismissed.

## D. Counts 6–10 Fail To State a Claim Against Thatch or Brock.

Because Plaintiffs have failed to state a claim for fraud under any of the theories of liability discussed above, Plaintiffs' claims for unjust enrichment based upon Thatch and Brock's fraud, civil conspiracy to commit fraud, and aiding and abetting the fraudulent schemes against Thatch and Brock also fail. Plaintiffs have also failed to establish that they are entitled to the imposition of a constructive trust or an equitable accounting.

23

Specifically, to the extent Plaintiffs bring an independent cause of action for unjust enrichment,[5] they are required to allege that Thatch and Brock "obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). For the reasons stated herein, Plaintiffs have failed to sufficiently allege that Thatch or Brock participated in and benefited from fraud. Plaintiffs' request for a constructive trust also fails because, under Texas law, a constructive trust is a remedy for unjust enrichment. *See Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 436 (5th Cir. 1994) ("Under Texas law, constructive trust is not actually a trust, but rather an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act.").

Additionally, Plaintiffs' claims for civil conspiracy fail because such a claim cannot survive in the absence of Thatch or Brock having knowledge of fraudulent conduct, which the Court has concluded is not sufficiently alleged in the complaint. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (holding that "an actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement").

Plaintiffs have also failed to state a claim for aiding and abetting fraud because this is not a recognized claim under Texas law. *In re DePuy Orthopaedics, Inc.*,

---

[5]     *See Kharb v. Ericsson, Inc.*, No. 4:17-CV-619-ALM-CAN, 2018 WL 8369848, at *8 (E.D. Tex. Nov. 5, 2018), *report and recommendation adopted*, No. 4:17-CV-619, 2019 WL 1198399 (E.D. Tex. Mar. 14, 2019) (collecting cases to illustrate that district courts in the Fifth Circuit have reached different conclusions as to whether unjust enrichment is an independent cause of action in Texas).

*Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782 (5th Cir. 2018) (granting judgment as a matter of law on plaintiffs' aiding-and-abetting claim "because no such claim exists in Texas"); *see also Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 249 (5th Cir. 2020) ("when sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts. . . .For these reasons, we affirm the dismissal of the aiding and abetting claim." (cleaned up)).

Finally, an equitable accounting is only proper "when the facts and accounts presented are so complex that adequate relief may not be otherwise obtained at law." *Burbank v. Compass Bank*, No. 1:15-CV-60, 2016 WL 3618691, at *8 (E.D. Tex. Mar. 29, 2016). Because Plaintiffs have failed to plead facts indicating that adequate relief cannot be obtained because the facts and accounts are too complex, the equitable accounting claim must also be dismissed for failure to state a claim.

Accordingly, Plaintiffs' counts 6–10 against Thatch and Brock will be dismissed.

### E. Plaintiffs Fail To State a Breach of Fiduciary Duty Claim Against Brock.

Plaintiffs also fail to state a claim against Brock for breach of fiduciary duty because they have not sufficiently alleged a basis for the existence of a fiduciary duty. In their complaint, Plaintiffs state that "as managers, members, and/or managing members of FOG, Brock and Does 1-5 owed fiduciary duties to FOG's members, including Plaintiffs." (Dkt. #1 ¶ 221). When discussing Brock's role with FOG, Plaintiffs assert upon information and belief that "Brock was a co-founder, member,

agent, and/or representative of FOG." (Dkt. #1 ¶ 26). Thus, Plaintiffs fail to specifically allege what Brock's role with FOG was during the time that the Plaintiffs were investors and how such a role gives rise to a fiduciary duty. *See Cobb v. Ocwen Loan Servicing, LLC*, No. 1:11-CV-561, 2012 WL 13162834, at *5 (E.D. Tex. June 27, 2012) (stating that, "[u]nder Texas law, a fiduciary relationship is an extraordinary one and will not lightly be created" and dismissing a breach of fiduciary duty claim when the plaintiff's complaint relied on "conclusory" statements and was "devoid of any facts" suggesting a fiduciary duty existed (cleaned up)).

Accordingly, Plaintiffs' breach of fiduciary duty claim against Brock will be dismissed.

## F. Plaintiffs Fail To Assert Any Plausible Claims Against Alchemist.

The Plaintiffs purport to bring counts 2–10 of the complaint against Alchemist. However, the complaint is devoid of any allegations of any actions particular to Alchemist. Instead, the complaint merely recites the elements of alter ego liability without providing any specific facts demonstrating a plausible basis for alter ego liability for Alchemist as to any other specific defendant.[6] It is unclear which defendant Alchemist is purported to be the alter ego of. *See* (Dkt. #1 ¶ 112). And to the extent Plaintiffs are alleging Alchemist is the alter ego of SHRG because of its

---

[6]        *See* (Dkt. #1 ¶ 112) ("Upon information and belief, Defendants Oblong, Brock, Thatch, and/or Alchemist dominated and controlled SHRG, Elepreneurs, Elevacity, FOG and FOHI . . . and that there existed, and now exists, such a unity of ownership and interest between the individuals and entities, that the individuality and separate existence of these individuals and the entities cease to exist. These individuals and entities are in fact a mere instrumentality or alter ego of one another, including SHRG, or, in the case of Alchemist, the largest shareholder of SHRG.").

role as the largest shareholder of SHRG, the complaint fails to sufficiently plead facts supporting alter ego liability as to SHRG. *See Licea v. Curacao Drydock Co., Inc.*, 952 F.3d 207, 213 (5th Cir. 2015) ("However, '[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders.'" (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174–75 (Tex. 2007)). Instead, the conclusory and vague allegations regarding Alchemist are insufficient to state a claim for alter ego liability. *See* (Dkt. #1 ¶¶ 114–16); *Kirschstein v. Bowie Cnty., Tex.*, 5:07-CV-59-DF, 2008 WL 11449196, at *4 (E.D. Tex. May 14, 2008) (dismissing claims based on plaintiffs' alter ego theory of liability when the allegations of alter ego "do[] not rise above the level of conclusory allegations or legal conclusions" (cleaned up)).

Accordingly, Plaintiffs' claims against Alchemist will be dismissed.

### IV. CONCLUSION

For all the reasons the Court has given, Defendant John "JT" Thatch's Motion to Dismiss for Failure to State a Claim, (Dkt. #19), is **GRANTED in part** and **DENIED in part**, and each of Plaintiffs' claims as to Thatch in the complaint, (Dkt. #1), are **DISMISSED without prejudice**. Defendants Jordan Brock and Alchemist Holdings, LLC's Motion to Dismiss, (Dkt. #39), also is **GRANTED in part and DENIED in part**. Count 1 of Plaintiffs' complaint, (Dkt. #1), is **DISMISSED with prejudice** as to Brock. Counts 2–11 of Plaintiffs' complaint are **DISMISSED without prejudice** as to Brock, and counts 2–10 are **DISMISSED without**

27

**prejudice** as to Alchemist. It is further **ORDERED** that Plaintiffs have **fourteen days** from the date of this order to amend their complaint as to all claims that have been dismissed without prejudice in this order.

**So ORDERED and SIGNED this 30th day of September, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE