UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

DENNIS BURBACK, ET AL. §
§
v. § CIVIL NO. 4:20-CV-946-SDJ
§
ROBERT OBLON, ET AL. §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant Jordan Brock's Motion to Dismiss Plaintiffs'
First Amended Complaint, (Dkt. #86), and Defendants Four Oceans Holdings, Inc.,
Elepreneurs U.S., LLC, Elevacity U.S. LLC, and Sharing Services Global
Corporation's (the "Moving Entity Defendants") Motion to Dismiss Plaintiffs' First
Amended Complaint, (Dkt. #87). The Court, having considered the motions, the
responsive briefing, and the applicable legal authorities, concludes that both motions
should be **GRANTED**.

## I. BACKGROUND

On September 30, 2021, the Court issued its Memorandum Opinion and Order,
*Burback v. Oblon*, No. 4:20-CV-946-SDJ, 2021 WL 4477607, at *1 (E.D. Tex. Sept. 30,
2021), (the "Prior Opinion"), which granted in part and denied in part Defendant
Brock, former Defendant Alchemist Holdings, LLC, and former Defendant John
Thatch's dismissal motions. In such Prior Opinion, the Court granted Plaintiffs leave
to amend their complaint as to certain claims against Defendants Brock, Alchemist,
and Thatch. On October 14, 2021, Plaintiffs filed their First Amended Complaint,

1

(Dkt. #78), (the "FAC"). Brock and the Moving Entity Defendants subsequently filed the present motions to dismiss the FAC. *See* (Dkts. #86, #87).

Although the majority of the factual allegations from the complaint set forth in the Prior Opinion are the same as the relevant factual allegations here, the Court will restate certain facts as key background.

Plaintiffs Dennis Burback, Ken Eddy, and Mark Anderson are individual investors who participated in two securities-related transactions that they allege were part of two fraudulent schemes. Plaintiffs have alleged various fraud causes of action arising from these schemes against three individual defendants, Brock, Robert Oblon, and Jeff Bollinger; and several entity defendants, Four Oceans Holding, Inc. ("FOHI"), Elepreneurs U.S., LLC ("Elepreneurs"), Elevacity U.S., LLC ("Elevacity"), Sharing Services Global Corporation ("SHRG"), FourOceans Global LLC ("FOG"), and Custom Travel Holdings, Inc. ("CTH"). As explained further herein when relevant, the individual defendants have allegedly held various roles as founders and officers of the various entity defendants.

Specifically, the first scheme alleged is the "Promissory Note-Fraud Scheme" ("PNFS"). As part of the PNFS, Oblon and Brock allegedly made false representations to Plaintiffs, which ultimately resulted in Plaintiffs investing in FOG on or about September 10, 2015, through the execution of Note Purchase Agreements for securities in unregistered transactions. (Dkt. #78 ¶¶ 38–40). It became apparent to Plaintiffs "in approximately the February to March 2016 timeframe" that Oblon, the founder of FOG and other entity defendants, "had failed and FOG would be a failure."

(Dkt. #78 ¶ 47). After discussing with Plaintiffs that FOG may be pivoted into other business ventures, Oblon informed Plaintiffs that "the FOG business plan, model, and its principal assets were migrated into the Elevacity and/or Elepreneurs ventures." (Dkt. #78 ¶¶ 48–49). Oblon took this step "without informing FOG members, including Plaintiffs." (Dkt. #78 ¶ 49). Elepreneurs, Elevacity, and FOHI were later acquired by SHRG on or about October 9, 2017. (Dkt. #78 ¶ 32). Plaintiffs did not receive compensation, such as revenue share or interest, that they otherwise were entitled to under the Note Purchase Agreements. (Dkt. #78 ¶¶ 42; 49–55).

The second scheme alleged in the complaint is the "CTH Stock-Fraud Scheme" ("CTHS"). *See* (Dkt. #78 ¶ 70). As part of the CTHS, in February 2018, Plaintiffs, through Eddy, inquired with now-dismissed Defendant Thatch about their investments, and Thatch "stated there were no irregularities with the FOG investments." (Dkt. #78 ¶ 70). Eddy then expressed his concerns to Brock, who also "stated there were no irregularities with the FOG investments." (Dkt. #78 ¶ 71).

Brock also informed Plaintiffs, through Eddy, that he, Oblon, Thatch, and Bollinger "had a 'plan' to get Plaintiffs their ownership and equity interests in FOG converted into stock in Oblon's 'new company.'" (Dkt. #78 ¶ 71). In April 2018, Brock told Plaintiffs that he, Oblon, Thatch, and Bollinger were "working on the value of the vehicle to make this happen," which Plaintiffs allege Eddy understood to be "SSI" (now known as SHRG) (Dkt. #78 ¶ 73). A few months later, Brock, Bollinger, and Plaintiffs attended a call during which Bollinger "explained the details of his, Oblon's, Brock's, and Thatch's 'plan' and falsely represented to Plaintiffs that FOG had been

dissolved, which Brock, as the acting manager of FOG (and an officer or former officer of SHRG) did not correct, but that Plaintiffs instead would get stock in Oblon's new company, SHRG." (Dkt. #78 ¶¶ 75–76). Bollinger then explained that for the transaction to be completed without raising concerns with the SEC, "Plaintiffs would now have to transfer and assign their interests in FOG to CTH," and Brock did not object to this plan when it was explained to Plaintiffs. (Dkt. #78 ¶ 76).

Plaintiffs subsequently entered into Subscription Agreements to acquire CTH stock securities in unregistered transactions. (Dkt. #78 ¶ 77). Prior to this transaction, "Brock and Bollinger made clear to Plaintiffs that they had foreknowledge of a pending acquisition of CTH by SHRG" but also said that this acquisition was not public knowledge and Plaintiffs were not supposed to know about it. (Dkt. #78 ¶ 78). Brock and Bollinger explained that after the acquisition occurred, Plaintiffs' stock in CTH would be converted to SHRG stock, which they could then sell to recoup their original investment. (Dkt. #78 ¶ 78). In July 2018, Brock "falsely represented" to Plaintiffs that SHRG was in the process of acquiring CTH, and that the CTH shares would be converted to shares in SHRG. (Dkt. #78 ¶ 83). Further, "Oblon, Brock, and Bollinger repeatedly assured Plaintiffs that their investments in FOG would be secured and protected by this contemplated transaction." (Dkt. #78 ¶ 83). Brock also informed Plaintiffs that a settlement and release agreement would need to be executed in favor of FOG. (Dkt. #78 ¶ 84). These agreements were never executed by FOG. (Dkt. #78 ¶ 86).

On or about June 1, 2019, Brock informed Plaintiffs that "the deal for SHRG to purchase CTH was not going to happen, and that because FOG was dissolved, the 'plan' they made to attempt to compensate Plaintiffs had fallen through, Plaintiffs were simply out of luck and that their investment, commissions, and their ownership and equity interests were lost." (Dkt. #78 ¶ 88).

Based on these allegations, Plaintiffs assert eight causes of action against various defendants: (1) securities fraud relating to the CTHS against all Defendants; (2) statutory fraud under Texas Business & Commerce Code § 27.01 against, as relevant here, Brock, and FOHI related to PNFS, and all Defendants as to the CTHS; (3) common-law fraud against, as relevant here, Brock, and FOHI related to PNFS, and all Defendants as to the CTHS; (4) fraud by nondisclosure against, as relevant here, FOHI related to PNFS, and all Defendants as to the CTHS; (5) unjust enrichment against all Defendants; (6) civil conspiracy against all Defendants; (7) breach of fiduciary duty against, as relevant here, Brock; and (8) knowing participation in fraud and breaches of fiduciary duty against, as relevant here, Brock.

Brock and the Moving Entity Defendants now move to dismiss Plaintiffs' claims against them for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). For reasons explained below, the motions are granted.

## II. LEGAL STANDARDS

Rule 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility." *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation omitted). Legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To determine whether the plaintiffs have pleaded enough to "nudge[]" their claims "across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Id.* at 679–80 (quoting *Twombly*, 550 U.S. at 570).

For all claims sounding in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

Given the plain meaning of the text, the Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"[1] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997)), *cert. denied,* 558 U.S. 873, 130 S.Ct. 199, 175 L.Ed.2d 125 (2009). Although the particularity requirement of Rule 9(b) is relaxed for conditions of the mind such as scienter, "case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994). Mindful of these standards, the Court now examines the substance of the motions to dismiss.

### III. DISCUSSION

The Court first considers Brock's motion, followed by the Moving Entity Defendants' motion.

---

[1] Plaintiffs again argue, as they did unsuccessfully in their responsive briefing on the previous motions to dismiss, that the particularity requirement should be "relaxed" in this case because "the alleged fraud occurred over an extended period of time and consists of numerous acts." (Dkt. #95 at 9). However, as this Court clarified in *Gilmour, Tr. for Grantor Trusts of Victory Med. Ctr. Craig Ranch, LP v. Blue Cross & Blue Shield of Ala.,* No. 4:19-CV-160-SDJ, 2021 WL 1196272, at *7 (E.D. Tex. Mar. 30, 2021), and in its Prior Opinion, the relaxation of Rule 9(b) generally is applicable only to plaintiffs suing under the False Claims Act and is not applicable here. *See United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 188–89 (5th Cir. 2009).

## A.  Brock's Motion to Dismiss

### i. The FAC fails to state a claim against Brock for securities fraud with respect to the CTHS.

In count 1 of the FAC, Plaintiffs again allege that Brock committed securities fraud with respect to Plaintiffs' purchase of stock interests in CTH in June 2018 as part of the CTHS. As an initial matter, because the claims in count 1 are brought under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, Plaintiffs must meet the pleading standards under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(1)(B). The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78(u)-4(b)(1).

The Fifth Circuit has recognized that "the effect of the PSLRA in this respect is to, *at a minimum*, incorporate the standard for pleading fraud under Fed. R. Civ. P. 9(b)." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (cleaned up). This is because "[t]he PSLRA was enacted, in part, to compensate for the perceived inability of Rule 9(b) to prevent abusive, frivolous strike suits." *Id.* at 354 (quotation omitted). If the complaint fails to meet the standards of the PSLRA, then the Court must, on the defendant's motion, dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A).

Against this backdrop, to state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead "(1) a misstatement or omission; (2) of a material fact; (3) made

with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland*, 365 F.3d at 362. A misstatement or omission is material if "there is a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.* (quotation omitted). Scienter is "an intent to deceive, manipulate, defraud or severe recklessness." *Owens v. Jastrow*, 789 F.3d 529, 535–36 (5th Cir. 2015) (quoting *Lormand v. US Unwired, Inc*, 565 F.3d 228, 251 (5th Cir. 2009)). In this context, severe recklessness is "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* at 536 (quotations omitted).

At the 12(b)(6) stage, "the required strong inference of severe recklessness must be more than merely reasonable or permissible—it must be cogent and compelling, thus strong in light of other explanations." *Id.* (cleaned up). The Court must therefore "'take into account plausible inferences opposing as well as supporting a strong inference of scienter.'" *Id.* (quoting *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)). The complaint will survive scrutiny under Rule 12(b)(6) "only if the inference of scienter is 'at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324, 127 S.Ct. 2499,

168 L.Ed.2d 179 (2007)). In conducting this analysis, courts may first look to the contribution of individual allegations of scienter but must ultimately look holistically at all allegations of scienter to see if they support a strong inference of scienter. *Id.* at 537.

In the FAC, Plaintiffs allege that Brock, beginning in March of 2018, made various false statements to Plaintiffs regarding Plaintiffs' investments with FOG and a plan to recover Plaintiffs' investments. *See* (Dkt. #78 ¶121(b)–(d)). For the most part, these allegations are identical to the allegations from the original complaint, except that they now state that (i) Brock's representations, previously termed "indications," were actually affirmative "statements," (ii) Brock was a manager of FOG and a current or former officer and director of SHRG, (iii) Brock's "representation was false and Brock knew it was false at the time the representation was made" (removing the alternative option that Brock made the alleged false representation without regard to its truth or falsity), and (iv) Brock's representations were significant to Plaintiffs. *See* (Dkt. #99-1 at 112–14). The FAC also states that Brock knew the CTHS was illegal and therefore knew "Plaintiffs' investments were induced in furtherance of a fraudulent scheme," and that Brock "took affirmative steps by actions and omissions to disguise and/or conceal the [CTHS]." (Dkt. #99-1 at 141). Similarly, the FAC states that "[b]y virtue of his roles at FOG, FOHI, and SHRG, Defendant Brock had actual, personal knowledge of the material misrepresentations, omissions, and conduct directed to Plaintiffs regarding the [CTHS and PNFS]." (Dkt. #99-1 at 141).

Despite these additions, the FAC still does not state a claim against Brock for securities fraud because it does not contain factual allegations demonstrating that Brock's statements were false when made or that Brock had knowledge of their falsity. Instead, Plaintiffs still rely primarily on conclusory allegations of falsity, which are insufficient to satisfy the standards of Rule 9(b). *See Burback*, 2021 WL 4477607 at *8; *see also In re Entrust Sec. Litig.*, No. 2:00-CV-119, 2002 WL 31968321, at *4 (E.D. Tex. Sept. 30, 2002) (dismissing a PLSRA complaint when the amended complaint failed to allege "with sufficient specificity *why* a statement was false when it was made." (emphasis added)).

To establish Brock's scienter, Plaintiffs also rely on his role with FOG and SHRG and receipt of shares in SSI that were converted to SHRG shares, his alleged knowledge of the fraudulent schemes, and the benefits SHRG allegedly received because of these schemes. *See* (Dkt. #99-1 at 137, 141). In large part, the scienter allegations, including the conclusory statements regarding Brock's knowledge of the falsity of his statements, turn upon Brock's role(s) with SHRG and FOG, which is an insufficient basis upon which to establish an inference of scienter. (Dkt. #78 ¶128(c)(ii)); *see Burback*, 2021 WL 4477607 at *8 (citing *Hall v. Rent-A-Ctr., Inc.*, No. 4:16-CV-978, 2017 WL 6398742, at *2 (E.D. Tex. Oct. 19, 2017), *report and recommendation adopted*, No. 4:16-CV-978, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017)); *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 544 (5th Cir. 2008) ("Scienter in a particular case may not be footed solely on motives universal to corporate executives."); *Naglich v. Applied Optoelectronics*, 436

F.Supp.3d 954, 976 (S.D. Tex. 2020) ("Scienter in a particular case may not be based on allegations that the defendants knew the concealed information by virtue of their positions or 'close involvement in the day-to-day operation and management of [the company].'" (quoting *Goldstein v. MCI WorldCom*, 340 F.3d 238, 251 (5th Cir. 2003)).

Nor is the addition of the allegation that Brock received shares in SSI (converted to SHRG shares), as well as other forms of compensation, sufficient to create a *strong* inference of scienter as required under *Tellabs* because the FAC does not allege the value of these shares and compensation at the time, nor explain why and how these compensation mechanics were tied to the CTHS. *See Shaw Grp.*, 537 F.3d at 544 (noting that while incentive compensation packages may be considered in conjunction with other scienter allegations, "only in an extraordinary case is it probative."). Thus, as in the original complaint, Plaintiffs have failed to sufficiently allege facts demonstrating the falsity of Brock's statements or Brock's scienter.

Accordingly, the PSLRA requires the Court to dismiss this count under its high pleading standards. *See In re Entrust*, 2002 WL 31968321 at *5 ("Although the particularity requirements set forth by that statute make private securities fraud suits difficult to plead, that is a statement of Congressional policy choice. This court must abide by that choice.").

### ii. Counts 2–4 fail to state a claim against Brock as to the PNFS or CTHS.

In their FAC, Plaintiffs again assert state law fraud-based causes of action against Brock: statutory fraud claims under Section 27.01 of the Texas Business &

Commerce Code and common-law fraud and fraud by nondisclosure claims under Texas law. Plaintiffs also fail to state a claim against Brock on any of these state law fraud-based claims.

As explained in the Court's Prior Opinion, a claim for statutory fraud under Section 27.01 of the Texas Business & Commerce Code requires, as relevant here, a false representation of a past or existing material fact made to a person for the purpose of inducing that person to enter into a contract for the sale of stock and relied on by that person in entering into that contract. TEX. BUS. & COM. CODE § 27.01. Notably, a cause of action for statutory fraud differs from common-law fraud in that statutory fraud "does not require proof that the false representation was made knowingly or recklessly." *Autoficio, LLC v. Cimble Corp.*, No. 4:17-CV-404-KPJ, 2020 WL 3209014, at *13 (E.D. Tex. June 15, 2020) (quotation omitted). A false representation is material under Texas law "if a reasonable person would attach importance to and be induced to act on the information." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010) (citation omitted).

A plaintiff bringing a common-law fraud claim for an affirmative misrepresentation under Texas law must show:

> (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Autoficio*, 2020 WL 3209014 at *10 (citation omitted).

Under Texas law, in addition to a misrepresentation, fraud can also be based allegations that "the defendant concealed or failed to disclose a material fact when a duty to disclose existed" and the rest of the elements of common-law fraud are satisfied. *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005).

### a. Claims related to the PNFS

In their FAC, Plaintiffs now assert their claims for statutory fraud and common-law fraud against Brock as related to the PNFS. The statute of limitations for fraud claims in Texas is four years. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); *see Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617–18 (Tex. 2007) (applying the four-year statute of limitations to statutory fraud claim). Brock argues that limitations for any fraud claims related to the PNFS ran four years after the Plaintiffs executed the Note Purchase Agreements. Plaintiffs contend that the discovery rule tolls the statute of limitations as to their PNFS claims because they did not have full knowledge of the PNFS until they received a demand letter on December 8, 2020, from Bollinger's attorney detailing allegations against Brock related to the PNFS and CTHS.

Brock in turn argues that despite such discovery-rule allegations, Plaintiffs knew or should have known of the facts giving rise to their claim prior to this because they admit in the FAC that they knew by February or March of 2016 that "FOG would be a failure" and that FOG's principal assets were migrated into Elevacity and/or Elepreneurs ventures without consent from FOG members. (Dkt. #78 ¶ 47). The

14

Court agrees. Under Texas law, the discovery rule exception "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Assocs. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (citation omitted)). In this case, Plaintiffs' assertions in the FAC refute their attempt to invoke the exception. Specifically, the FAC affirmatively demonstrates that Plaintiffs knew or should have known of facts giving rise to their fraud claims after the exercise of reasonable diligence related to the PNFS, which involved their original investment in FOG, in February or March of 2016 when they learned that their investment in FOG was unsuccessful. Because this occurred more than four years prior to the initiation of this lawsuit, such claims premised on the PNFS are necessarily barred by the statute of limitations.

### b.  Claims related to the CTHS

For the reasons already explained in the Court's discussion of the securities-fraud claims asserted against Brock, Plaintiffs' failure to allege sufficient facts demonstrating Brock's knowledge of the fraudulent scheme or that statements about the "plan" were false when made is fatal to Plaintiffs' claims for common-law fraud and fraud by nondisclosure related to the CTHS, and such claims will be dismissed.

Plaintiffs again cite to *In re Enron Corp. Sec., Derivative & "'ERISA'" Litig.*, 490 F.Supp.2d 784, 822 (S.D. Tex. 2007) for the proposition that a Section 27.01 claim may be predicated upon a party's omissions. *See* (Dkt. #95 at 23). That may be true. But, as the Court explained in its Prior Opinion, in *Enron*, the court held that the

plaintiffs alleged sufficient facts to impose a "duty to disclose *additional* information" because plaintiffs in that case alleged facts demonstrating that the defendants were aware of the falsity of their own reports and failed to issue corrective disclosures. 490 F.Supp.2d at 822 (emphasis added). As discussed above regarding Plaintiffs' securities fraud claim, Plaintiffs have failed to sufficiently allege facts demonstrating that Brock had knowledge of the alleged schemes that would lead him to know that his various statements to Plaintiffs were false and impose upon him a duty to disclose additional information for the purposes of a statutory fraud claim.

Accordingly, Plaintiffs' claims for statutory fraud, common-law fraud, and fraud by nondisclosure against Brock will be dismissed.

### iii.    Counts 5–8 fail to state a claim against Brock.

Because Plaintiffs have failed to state a claim for fraud under any of the theories of liability discussed above in the FAC, Plaintiffs' claims for unjust enrichment based upon Brock's alleged fraud and civil conspiracy to commit fraud also fail for the reasons the Court explained in the Prior Opinion. *See Burback*, 2021 WL 4477607 at *10. Plaintiffs' claims for breach of fiduciary duty and "joint and several liability for knowing participation" also fail to state a claim against Brock. Regarding the breach of fiduciary duty claim, the statute of limitations is four years. TEX. CIV. PRAC. & REM. CODE 16.004(a)(5). Brock argues that any breach of fiduciary duty claim related to the PNFS is barred for the same reasons that Plaintiffs' fraud claims related to the PNFS are barred. The Court agrees.

As for any breach of fiduciary duty claim related to the CTHS, the only

fiduciary duty Plaintiffs seem to allege is that Brock was "a manager of FOG beginning at least as of October 8, 2015." (Dkt. #78 ¶ 194). However, Plaintiffs cite no cases, and the Court is not aware of any, holding that the managing member of an LLC owes fiduciary duties to the other members—such as Plaintiffs—directly, as could be pursued through a direct action rather than a derivative action. *See Katz v. Intel Pharma, LLC*, No. CV H-18-1347, 2020 WL 3871493, at *2 (S.D. Tex. July 9, 2020) (noting that the Texas Business Organization Code is silent as to an LLC member's fiduciary duties, except to state that the company agreement can modify such duties).

However, even if Brock did owe some type of informal fiduciary duty to Plaintiffs, the FAC fails to contain sufficient allegations demonstrating that Brock breached such duty. The majority of the allegations of breach rely upon and incorporate the same allegations that make up the fraud claims against Brock, such as allegations that Brock breached his fiduciary duty to Plaintiffs by "making fraudulent representations," failing to "disclose material facts," and "grossly mismanag[ing] FOG." *See* (Dkt. #78 ¶¶ 197–198). For the same reasons as discussed above, the FAC fails to sufficiently allege that Brock made statements that were false at the time and that he had knowledge of the fraudulent scheme, such that he would have breached any informal fiduciary duty he may have had. Accordingly, Plaintiffs' breach of fiduciary duty claim will be dismissed.

Similarly, Plaintiffs' count 8, which asserts a claim for "Joint and Several Liability for Knowing Participation and Assisting in Brock's and Oblon's Fraudulent

Conduct and Breaches of Fiduciary Duties" also fails. (Dkt. #78 ¶ 201). Within count 8, Plaintiffs purport to list three "theories of liability," but ultimately appear to be either asserting a claim for aiding and abetting or knowing participation in the alleged fraud and breach of fiduciary duties. (Dkt. #78 at ¶ 202). To the extent Plaintiffs are attempting to assert an aiding and abetting claim, such attempt fails because, as the Court set out in its Prior Opinion, aiding and abetting is not a recognized cause of action under Texas law. *See Burback*, 2021 WL 4477607 at *10 (citing *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782 (5th Cir. 2018) (granting judgment as a matter of law on plaintiffs' aiding-and-abetting claim "because no such claim exists in Texas"); *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 249 (5th Cir. 2020) ("when sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts.... For these reasons, we affirm the dismissal of the aiding and abetting claim." (cleaned up)). And, to the extent Plaintiffs are alleging a claim for knowing participation, such claim also fails because under Texas law a knowing-participation claim requires "that the third party was aware that it was participating" in the allegedly fraudulent or otherwise tortious act. *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). As stated above, Plaintiffs have failed to allege plausibly and with sufficient particularity that Brock had knowledge of the fraudulent schemes that form the basis of the allegedly fraudulent actions and breach of fiduciary duties. Accordingly, count 8 against Brock will be dismissed.

## B. The Moving Entity Defendants' Motion to Dismiss

### i. The FAC fails to state a claim against the Moving Entity Defendants for securities fraud or for the various state-law fraud claims.

The FAC asserts a securities fraud claim and state-law fraud claims against the Moving Entity Defendants based solely upon the conduct of Brock and Oblon. Specifically, the FAC alleges that Brock's actions are imputed to the various Moving Entity Defendants because he was President, CEO, and Chairman of the Board of Directors of SHRG, he was the last manager of FOG, FOHI is the successor in interest to FOG, and FOG's assets were transferred to Elepreneurs, Elevacity, and/or FOHI, all of which are wholly-owned subsidiaries of SHRG. The FAC also alleges that FOHI acted through Oblon, and Oblon was the Chairman of SHRG for a period of time.

The Moving Entity Defendants argue that despite these allegations regarding Oblon's and Brock's positions with the various entities, the fraud claims should be dismissed because Plaintiffs have failed to state claims for fraud against the former officers—Brock and Oblon—and to the extent Plaintiffs did state claims against them, Plaintiffs failed to plead sufficient facts demonstrating that the actions were undertaken with agency on behalf of the Moving Entity Defendants. Plaintiffs respond that the FAC now states claims against Brock and Oblon and that all that is required for at least the state-law fraud claims is that the Moving Entity Defendants "financially benefitted from the alleged fraud to charge them with the fraud." (Dkt. #96 at 13).

First, the Court agrees with the Moving Entity Defendants that because Plaintiffs have failed to state a claim for fraud against Brock under any of their

19

theories, all claims against the Moving Entity Defendants relying upon the actions of Brock will be dismissed. And the Court need not examine whether the Plaintiffs have stated a claim against Oblon, because even assuming that they did, the FAC does not contain sufficient allegations linking the Moving Defendant Entities to Oblon's actions.

Addressing first the securities fraud claim, as the Supreme Court has emphasized, the private right of action under Rule10b-5 is an *implied* private right of action, and as such, should be construed narrowly. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011). Therefore, under this rule, only "makers" of statements can be held liable, and "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 142. Therefore, to state a claim under this section against the Moving Entity Defendants, Plaintiffs must demonstrate that the Moving Entity Defendants had ultimate authority over Oblon's statements and omissions. *See id.*

Similarly, for the state-law fraud claims based on Oblon's actions to be imputed to the Moving Entity Defendants, Plaintiffs must demonstrate that Oblon was acting on behalf of those entities when he undertook the allegedly fraudulent actions. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (affirming dismissal of Texas common-law fraud claims against two companies when the plaintiff failed to "allege in his complaint facts to support his assertion that [the individual who was an officer and director of the two companies] acted on behalf of

those companies when he [made the allegedly false representations].”). In support of its argument that agency allegations are not required, Plaintiffs cite *In re Arthur Anderson LLP*, 121 S.W.3d 471, 481 (Tex. App.—Houston [14th Dist.] 2003, no pet), but fail to recognize that in that case, the court held that while a third-party need not make the fraudulent misrepresentations itself to be liable, it needed to “participate” in the fraud. As mentioned above, the FAC is devoid of any allegations that the Moving Entity Defendants participated in any fraud, apart from the actions of Brock and Oblon. And, for all of the fraud claims, Plaintiffs’ allegations regarding Oblon’s agency must be pleaded with the particularity required under Rule 9(b). *See Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*, No. CIV.A. H-06-1492, 2007 WL 400094, at *3 (S.D. Tex. Feb. 1, 2007) (collecting cases).

The Court concludes that the FAC does not plead sufficient *facts* establishing that the Moving Entity Defendants had “ultimate authority” over Oblon’s statements or omissions or that Oblon was acting on behalf of those entities when he made the allegedly fraudulent statements. Instead, the FAC relies exclusively on Oblon’s role within the entities and conclusory, boilerplate statements that in those roles, he had some form of authority to act on their behalf. *See*, *e.g.*, (Dkt. #78 ¶¶ 17–22; 128(c)(iii)–(vii); 151). These allegations are insufficient to link the Moving Entity Defendants to Oblon’s allegedly fraudulent acts. *See Dorsey*, 540 F.3d at 341–42. Accordingly, Plaintiffs’ fraud claims against the Moving Entity Defendants will be dismissed.

### ii. The remaining counts in the FAC fail to state a claim against the Moving Entity Defendants.

Plaintiffs also assert claims for unjust enrichment and civil conspiracy against the Moving Entity Defendants. However, just as for Brock, these claims must fail because all of the underlying fraud claims related to these Defendants also fail. Accordingly, these claims will be dismissed.

Finally, Plaintiffs' alter ego allegations are also insufficient to establish liability as to the Moving Entity Defendants. As the Court noted in its Prior Opinion with regard to the largely identical allegations now in the FAC, the FAC merely recites the elements of alter ego liability without providing any specific facts demonstrating a plausible basis for alter ego liability for the Moving Entity Defendants. *See Burback*, 2021 WL 4477607 at \*11; *Kirschstein v. Bowie County*, 5:07-CV-59-DF, 2008 WL 11449196, at \*4 (E.D. Tex. May 14, 2008) (dismissing claims based on plaintiffs' alter ego theory of liability when the allegations of alter ego "do[] not rise above the level of conclusory allegations or legal conclusions" (cleaned up)). Accordingly, Plaintiffs' claims against the Moving Entity Defendants will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendant Jordan Brock's Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support, (Dkt. #86) is **GRANTED**, and each of Plaintiffs' claims as to Brock in the FAC, (Dkt. #78), are **DISMISSED with prejudice**. Defendants Four Oceans Holdings, Inc., Elepreneurs U.S., LLC, Elevacity U.S. LLC, and Sharing Services Global Corporation's Motion to Dismiss

Plaintiffs' First Amended Complaint, (Dkt. #87), also is **GRANTED**, and each of Plaintiffs' claims as to Four Oceans Holdings, Inc., Elepreneurs U.S., LLC, Elevacity U.S. LLC, and Sharing Services Global Corporation in the FAC, (Dkt. #78), are **DISMISSED with prejudice**. Defendants Jordan Brock, Four Oceans Holdings, Inc., Elepreneurs U.S., LLC, Elevacity U.S. LLC, and Sharing Services Global  Corporation are **DISMISSED** as parties in this action.

**So ORDERED and SIGNED this 20th day of July, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE